IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 10, 2002

**STATE OF TENNESSEE v. SHERRY L. WILLIAMS**

**Direct Appeal from the Criminal Court for Sullivan County**
**Nos. S44,925-931 S45,851 S45,852    Phyllis H Miller, Judge**

_____

**No. E2002-01288-CCA-R3-CD**
**February 13, 2003**
_____

The defendant, Sherry L. Williams, pleaded guilty to 20 forgery charges and three charges of criminal impersonation, with a recommended effective sentence of seven years. The plea agreement provided that the trial court would determine the manner of service of the sentence. After a sentencing hearing, the trial court denied any form of alternative sentencing and ordered incarceration in the Department of Correction. From this determination, the defendant appeals. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JERRY L. SMITH J., joined.

Steve McEwen, Mountain City, Tennessee (on appeal); Stephen M. Wallace, District Public Defender; and Leslie S. Hale, Assistant District Public Defender (at trial), for the Appellant, Sherry L. Williams.

Paul G. Summers, Attorney General & Reporter; Helena Walton Yarbrough, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and William Harper, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

In April 2001, the Sullivan County Grand Jury returned a presentment against Sherry L. Williams charging 25 counts of forgery, Tenn. Code Ann. § 39-14-114 (1997), and a one-count indictment charging criminal impersonation, *id*. § 39-16-301 (Supp. 2002). The following month, the defendant was indicted on eight additional counts of forgery. Two new criminal impersonation charges and one charge of identity theft, *id*. § 39-14-150 (Supp. 2002), were returned by indictment in June, and on January 30, 2002, a final group of seven forgery charges were reported out by the grand jury.

Negotiations between the defendant, who was a Range I standard offender, and the state resulted in the following plea agreement submitted to the trial court for approval.

S44,925: Guilty pleas to five counts of forgery, with an agreed sentence of one year on each count to be served concurrently to each other; dismissal of 20 counts of forgery.

S44,926: Guilty plea to criminal impersonation, with an agreed sentence of six months to be served concurrently to sentences in S44,925.

S44,927: Guilty pleas to three counts of forgery, with an agreed sentence of one year on each count to be served concurrently to each other but consecutively to sentences in S44,925.

S44,928: Guilty plea to one count of forgery, with an agreed sentence of one year to be served consecutively to sentences in S44,925 and S44,927.

S44929: Guilty pleas to four counts of forgery, with an agreed sentence of two years on each count to be served concurrently to each other but consecutively to sentences in S44,925, S44,927, and S44,928.

S44930 & S44931: Guilty pleas to two counts of criminal impersonation, with an agreed sentence of six months to be served concurrently to each other and concurrently to sentences in S44,925.

S45,851: Guilty pleas to six counts of forgery, with an agreed sentence of two years on each count to be served concurrently to each other but consecutively to sentences in S44,925, S44,927, S44, 928, and S44,929.

S45,852: Guilty plea to one count of forgery, with a recommended sentence of two years to be served concurrently to the sentences in S45, 851.

Pursuant to the plea agreement, the defendant would receive an effective sentence of seven years and would pay restitution. The manner of service of the sentences was reserved for the trial court's determination.

We glean from the transcript of the guilty plea submission and the presentence investigation report, which are included in the appellate record, that sometime in 1994, the defendant

used the name, social security number, and other personal information of her former sister-in-law, Anita Cox, to open a charge account with Sears. The defendant, however, gave her own address as the billing address for the charge card. The defendant forged Ms. Cox's name to numerous charge slips, totaling at least $2,843. The defendant's fraudulent scheme went undetected until 1998 when the defendant's husband found mail and credit card receipts in their bedroom.

The first criminal impersonation charge involved an automobile accident in May 2000. When a police officer arrived at the scene to investigate, the defendant, who was intoxicated, produced a driver's license in the name of Brenda Light. Ms. Light is the defendant's sister.

The next three forgery charges stemmed from the theft of personal checks from the residence of James Hale. The defendant forged Mr. Hale's name to the checks, which totaled approximately $600, and passed them at Wal-Mart and Food City in Kingsport.

Checks stolen from Linda Carr were the basis for five additional forgery charges. The defendant forged Ms. Carr's name to checks totaling approximately $390; the defendant passed the checks at Food City and Ingles Food Store.

The second criminal impersonation charge arose when the defendant identified herself as Donna Bishop to an officer who was investigating suspicious late-night activity at the Elks' Lodge on December 7, 2000. Less than a month later, the defendant identified herself as Kristen Graybeal to an officer on duty at Riverview Apartments in Kingsport. Ms. Graybeal is the defendant's mother, and the third criminal impersonation charge related to the Graybeal identification.

In case number S45,851, the defendant stole checks from Ray Harkleroad in March 2001, made them payable to either herself or White's Fresh Foods, forged Mr. Harkleroad's signature, and passed them at various local businesses. The Harkleroad forged checks totaled slightly more than $1,000.

The final forgery charge, in case number S45,852, related to a $400 check forged and uttered by the defendant, also in March 2001. This check was stolen from Elizabeth Smith's purse, and the defendant cashed the check at First Tennessee Bank in Kingsport.

The trial court conducted a sentencing hearing on May 16, 2002 and ordered incarcerative sentencing. The defendant has appealed the application of two enhancement factors (gratifying the desire for pleasure or excitement and abuse of private trust) and the manner of service of her sentences. At the sentencing hearing, the defendant testified in support of her bid for probation or other alternative sentencing. She explained that her involvement in criminal activity derived from her drug usage, particularly crack cocaine. Even prior to using drugs, the defendant said that she had been abused in early childhood by her grandfather and uncle. She believed that she could benefit from counseling to deal with the childhood abuse, and if granted probation, the defendant told the court that she would do everything she could to follow up with counseling.

-3-

The defendant testified about in-patient drug rehabilitation programs that she had attended prior to being arrested. The defendant said that she had also been attending an alcohol and drug class that was available at the Sullivan County Jail. The defendant is divorced and has two minor children. Recently, her former husband had petitioned for full custody of the children, and one of the reasons the defendant gave for seeking a non-incarcerative sentence was to maintain custody of the children. If released, the defendant said that she could live with her mother and father. Her mother, the defendant testified, had been checking the employment section of the newspaper to help the defendant obtain employment.

On cross-examination, the defendant said that, prior to being arrested and incarcerated, she had been receiving $562 monthly in Social Security disability benefits. According to the defendant, she could still receive disability benefits if she were employed, depending on how much she earned. The defendant's last employment was working part-time at McDonald's. The defendant admitted that, in addition to crack cocaine, she had taken Lortab "pain killers, used marijuana, and eat[en] acid."

The court separately questioned the defendant and elicited that the defendant had access to Mr. Hale's house and his checks because she was dating Mr. Hale's son. The defendant was married at the time. The defendant described Mr. Harkleroad as a "friend" who was "like a daddy" to her. She testified that she met Mr. Harkleroad when she worked at Hardee's where Mr. Harkleroad was a regular customer. Their friendship developed to the point that the defendant was cleaning his house. The theft of Ms. Smith's check occurred while she and Ms. Smith were staying at a "safe house," used as a shelter for abused women. The defendant agreed with the court's assessment that she had been stealing and writing worthless checks since approximately 1995.

Based upon the evidence before it, the trial court found the existence of four enhancing factors. First, the defendant has a previous history of criminal convictions or behavior. *See* Tenn. Code Ann. § 40-35-114(2) (Supp. 2002).[1] Second, the defendant committed the forgeries to gratify her desire for pleasure or excitement. *Id*. § 40-35-114(8) (Supp. 2002). Third, the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. *Id*. § 40-35-114(9) (Supp. 2002). Fourth, the defendant abused a position of private trust. *Id*. § 40-35-114(16) (Supp. 2002). The trial court placed great weight on the last factor. As for mitigating factors, the trial court found but assigned slight weight to the fact that the defendant's conduct neither caused nor threatened serious bodily injury. *See id.* § 40-35-113(1) (1997). The trial court also stated that it gave the defendant "quite a bit of credit" for her self-rehabilitative efforts relative to participation in drug treatment.

---

[1] Effective July 4, 2002, the "enhancement factors" code section 40-35-114 was revised to add a new enhancement factor. 2002 Public Acts, ch. 849. The new enhancement factor, that the "offense was an act of terrorism, or was related to an act of terrorism," was designated enhancement factor (1), and former enhancement factors (1) through (22) were redesignated (2) through (23). Tenn. Code Ann. § 40-35-114 (Supp. 2002).

Based on the relevant circumstances, which the trial court enumerated to include a criminal history, illegal drug use demonstrating a clear disregard for society's laws and morals, the failure of past efforts at rehabilitation, "reprehensible" stealing from an employer and a boyfriend's father, and the need for deterrence, the trial court concluded that the defendant had not carried her burden of demonstrating that full probation would serve the ends of justice, the community, the defendant's family, or the defendant herself. As for other sentencing options, the only additional finding that the trial court articulated was that "there is no community corrections program in this county for women that I find would meet your needs as well as incarceration in the Department of Corrections."

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." *Id*. In the event the record fails to mirror the required consideration by the trial, review of the sentence proceeds on purely a *de novo* basis. *Id*. If, however, appellate review reflects that the trial court took into account all relevant factors and its findings of fact find adequate support in the record, this court mut affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In fashioning an appropriate sentence, the trial court, at the conclusion of the sentencing hearing, is to determine the range of sentence and then determine the specific sentence and propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternative, (4) the nature and circumstances of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b) (Supp. 2002), -103(5) (1997); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

Even though the defendant agreed to a sentence of seven years, she complains that the trial court erred in applying sentence enhancement factors. Because these factors are available for consideration of alternative sentencing, as well as in determining sentence length, we review these claims. *See* Tenn. Code Ann. § 40-35-210-(b)(5) (Supp. 2002).

Turning to the enhancement factors applied in this case, we agree with the trial court regarding the defendant's previous history of criminal convictions or behavior, *see* Tenn. Code Ann. § 40-35-114(2) (Supp. 2002), and regarding the defendant's previous history of unwillingness to comply with the conditions of a sentence involving release into the community, *see id*. § 40-35-114(9) (Supp. 2002). The presentence report supports these enhancement factors, as it reflects prior drug and "worthless check" convictions and the defendant's failure to "report[ ] for probation" in

connection with two previous "worthless check" convictions; the defendant, moreover, does not dispute these facts.

We part company with the trial court, however, on its determination that the forgeries were committed to gratify the defendant's desire for pleasure or excitement. *See id.* § 40-35-114(8) (Supp. 2002). The only basis that the trial court mentioned was the commission of the forgeries "so [she] could buy drugs and get high." The pleasure-or-excitement enhancement factor calls into question a defendant's motive for committing a crime. *See State v. Kissinger*, 922 S.W.2d 482, 490 (Tenn. 1996). "While . . . pleasure or excitement may be of a sexual nature, it does not have to be." *Id.* Accordingly, it is appropriate to use factor (8) for sentence enhancement related to offenses that do not have a sexual content. *Id.* The *Kissinger* court illustrated the point in the following fashion.

> An offender who steals because of a pleasure experienced in "not getting caught;" an arsonist who burns houses due to the excitement that watching fire brings; an assaulter who breaks an arm to hear the victim beg for mercy – all may have their sentences enhanced under factor [(8)] providing the state produces proof of the factor.

*Id.* Although the defendant's drug dependency in this case undoubtedly prompted the forgeries, drug addiction, without more, is not inextricably tied to pleasure or excitement. We do not gainsay that a person might, for example, thrive on the excitement of imitating signatures, but we are not confronted with evidence to establish such pleasure or excitement. *See State v. John Robert Benton*, No. E2000-03194-CCA-R3-CD, slip op. at 4-5 (Tenn. Crim. App., Knoxville, July 20, 2001) (court misapplied pleasure or excitement enhancement factor; defendant, convicted of vandalism and burglary, testified the incident was "alcohol-related").

We also part company with the trial court's determination that the defendant abused a position of private trust. *See* Tenn. Code Ann. § 40-35-114(8) (Supp. 2002). None of the forgeries involved an adult perpetrator and a minor victim. When the victims, as in this case, are adults, they "are generally held to have reasonable judgment and, unlike minors, can generally function reasonably independently." *State v. Gutierrez*, 5 S.W.3d 641, 645 (Tenn. 1999).

Application of the private trust factor "is a task that must be undertaken on a case-by-case basis." *State v. Poole*, 945 S.W.2d 93, 96 (Tenn.1 997). The sentencing court is directed to examine "the nature of the relationship" and whether that relationship "promoted confidence, reliability, or faith." *Kissinger*, 922 S.W.2d at 488. Such a relationship "usually includes a degree of vulnerability," and "[i]t is the exploitation of this vulnerability to achieve criminal purposes which is deemed more blameworthy and thus justifies application of the enhancement factor." *Gutierrez*, 5 S.W.3d at 646. The factor should be applied, the *Gutierrez* court explained, "only where there is evidence that the nature of the relationship between the perpetrator and the adult victim caused the victim to be particularly vulnerable. If such a relationship or 'private trust' is shown, the State must then prove that the perpetrator abused that relationship in committing

the crime." *Id*. (footnote omitted) (mere fact that defendant and adult victim lived together insufficient for application of private trust enhancement factor).

The trial court was understandably troubled by the defendant's exploitation of the victims in this case; however, in our opinion the proof falls short of demonstrating abuse of a position of private trust. There is no indication that the defendant's access to Mr. Hale's residence was obtained by exploiting any relationship with Mr. Hale; that the defendant was "dating" Mr. Hale's son, without more, does not prove a particular vulnerability of either the son or the father sufficient to apply this enhancement factor. *See State v. Bobby Garner*, No., M1999-01427-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Nashville, Nov. 9, 2000) (defendant married to victim's daughter at time of burglary; beyond the "familial relationship," no evidence of relationship that promoted confidence, reliability, or faith).

As for Mr. Harkleroad, no evidence was offered that his judgment was impaired or that he could not function reasonably independently. Even though the defendant was cleaning his house, no details about that arrangement are in the record. Nothing more being shown, Mr. Harkleroad cannot, from an evidentiary standpoint, be classified as a particularly vulnerable victim.

In summary, we conclude that the only applicable enhancement factors in this case are (2) and (9). Again, however, as part of the defendant's plea agreement, she received minimum sentences within the range, which was one to two years, on nine of the forgery convictions. For the other eleven forgery convictions, she received an agreed sentence of two years. Considering that enhancement factors (2) and (9) were appropriately applied in this case, in our opinion the two-year forgery sentences were altogether proper and suited to the defendant's criminal conduct, and to the extent that the trial judge considered factors (2) and (9) in determining alternative sentencing issues, she was justified in doing so. *See State v. James Anthony Cline*, No. E2001-02011-CCA-R3-CD, slip op. at (Tenn. Crim App., Knoxville, Aug. 6, 2002 (when determining if alternative sentence would be appropriate, trial court may apply relevant mitigating and enhancement factors).

Additionally, the defendant argues that alternative sentencing was warranted in her cases, rather than incarceration. The defendant was sentenced as a Standard Range I Offender, and the forgery convictions were Class E felonies. An alternative sentence is any sentence that does not involve total confinement. *See State v. Adrianne Elizabeth Noles*, No. W2002-01558-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Jackson, Dec. 12, 2002); *see generally State v. Fields*, 40 S.W.3d 435 (Tenn. 2001). A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (1997). Our sentencing scheme also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." *Id*. § 40-35-102(5) (1997). Consequently, a defendant who meets the above criteria is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. The Act, we hasten to add, does not provide that all offenders who meet the criteria

are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

The presumption of favorable candidacy for alternative sentencing may be rebutted by "evidence to the contrary." *Fields*, 40 S.W.3d at 440.

> Guidance as to what constitutes evidence to the contrary may be found in the following sentencing considerations contained in Tennessee Code Annotated section 40-35-103(1) (1997):
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is especially suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

*Id.*

The defendant, a Range I offender, enjoyed the presumption of favorable candidacy for alternative sentencing for her Class E felonies. *See* Tenn. Code Ann. § 40-35-102(6) (1997). Moreover, she was eligible for probation. *See id.* § 40-35-303(a) (Supp. 2002). Determining entitlement to full probation, however, necessarily requires a separate inquiry from that of determining whether a defendant is entitled to an alternative sentence. *See State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). Unlike the presumption of favorable candidacy for alternative sentencing in general, a defendant bears the burden of demonstrating suitability for full probation. *See* Tenn. Code Ann. § 40-35-303(b) (Supp. 2002); *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App.1999); *Bingham*, 910 S.W.2d at 455-56. To carry that burden, the defendant must show that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1999), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

Last, we note that the defendant met all of the minimum criteria for participation in a community corrections program and conceivably could be eligible for placement on the basis that her drug abuse is a "special need." *See* Tenn. Code Ann. § 40-36-106(a), (c) (Supp. 2002). Eligibility for the program, nevertheless, does not translate into automatic entitlement to such relief. *See Taylor*, 744 S.W.2d at 922.

The trial court did not expressly declare whether the presumption of the defendant's favorable candidacy for alternative sentencing had been rebutted, although it acknowledged that the presumption applied. The trial court did find that the defendant had not carried her burden of demonstrating that full probation would serve the interests of justice. The trial court also found that the defendant's needs would best be served by incarceration before being released into the community as opposed to placement in a community corrections program as an alternative sentence.

We agree with the trial court that the defendant did not demonstrate entitlement to full probation. The only reasons that the defendant's counsel offered were that probation would give the defendant a chance to prove that she could change, that the defendant had already been incarcerated for 211 days, that the defendant was willing to undergo counseling for drug abuse and her childhood physical abuse, and that she was willing to get a job and pay restitution and court costs. Under these circumstances, we cannot quarrel with the trial court's refusal to grant probation.

Although the trial court did not explicitly rule whether the presumption of favorable candidacy for alternative sentencing had been rebutted, it did cite to multiple negative aspects of the defendant's behavior. From the trial court's remarks, we discern that the trial court was troubled by other criminal offenses that the defendant had committed, by the defendant's failure to report for probation in 1999 on two "worthless check" charges, by the commission of new offenses while on probation, by her poor social and work history, by using her children as an excuse for more lenient sentencing, by the defendant's sustained intent to violate the law as evidenced by the length of time that the offenses had been ongoing and the efforts to conceal the forgeries, by the lack of "genuine sincere remorse" and failure to comply with prior court orders, and by the failure to accept responsibility for her wrongdoing.

The considerations that gave the trial court pause are sufficient to rebut the favorable candidacy presumption. These considerations, we note, are mirrored in the presentence report. Furthermore, the presentence report supports the trial court's evaluation of the defendant's lack of remorse and failure to accept responsibility. Kingsport Detective Mark Mason advised the presentence investigator that the defendant has a "criminal reputation in the community" and that she was not cooperative during the forgery investigations. In her statement given to the presentence investigator and included in the report, the defendant maintained that she did not forge the credit card purchases involving her former sister-in-law. Rather, the defendant claimed that the sister-in-law "gave" the credit cards to the defendant to purchase things for the defendant's children.

Lack of truthfulness is an appropriate and important consideration in determining whether an offender should be granted an alternative sentence. *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Gennoe*, 851 S.W.2d 833, 837 (Tenn. Crim. App. 1992). Lack of truthfulness is probative on the issue of amenability to rehabilitation. *State v. Neely*, 678 S.W.2d 48, 49 (Tenn. 1984). Also highly probative in this regard are the defendant's failure to report for probation in 1999 on two "worthless check" charges and the commission of new forgery offenses while on probation. Evidence of the presumption of favorable candidacy for an alternative sentence

includes the frequent or recent unsuccessful application of "[m]easures less restrictive than confinement." Tenn. Code Ann. § 40-35-103(1)(C) (1997).

Amenability to rehabilitation is likewise critical to selection of community corrections as an alternative sentence. *State v. Grigsby*, 957 S.W.2d 541, 547 (Tenn. Crim. App. 1997). "[G]iven their ability to review the offender's demeanor and characteristics first hand, trial courts are in the best position to ascertain an offender's amenability to a community corrections program." *Id*. Because of the trial courts' wide discretion, our court will not disturb the decision to grant or deny a community corrections sentence absent a clear abuse of discretion. *Id*.

The trial court's remarks at sentencing implicitly acknowledged that the defendant satisfied all of the following minimum criteria for participation in a community corrections program:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (3) Persons who are convicted of nonviolent felony offenses;
>
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]
>
> (6) Persons who do not demonstrate a pattern of committing violent offenses[.]

Tenn. Code Ann. § 40-36-106(a) (Supp. 2002). Even so, the law is settled that an offender meeting the requirements for eligibility is not automatically entitled to such relief. *See Ball*, 973 S.W.2d at 294; *Taylor*, 744 S.W.2d at 922. Rather, the statute provides that the criteria shall be interpreted as "minimum state standards, guiding the determination of eligibility of offenders" for the program. Tenn. Code Ann. § 40-36-106(d) (Supp. 2002). The trial court, in our opinion, regarded the defendant's attitude and mendacity as unsuitable for a community-based alternative to incarceration, particularly because the defendant previously had failed to report for probation on other convictions. Commitment to personal betterment is a key ingredient for successful completion of a community corrections program, and the trial court was in the best position to gauge this critical factor.

The trial court referred to the defendant's "needs" and to "need[ing] help" with her "drug abuse," suggesting that the trial court also evaluated the defendant's suitability for community corrections pursuant to the "special needs" access point to the program, which provides,

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

*Id.* § 40-36-106(C) (Supp. 2002).

The trial court stated that there was "no community corrections program in this county for women that I find would meet your needs as well as incarceration in the Department of Corrections." The court added, "You not only need help with your drug abuse, you need help with training for employment and getting some order in your life before you get back out in the community, trying to have interaction with you[r] children and other members of the community." Based upon all the evidence before it, the trial court, it seems to us, viewed the defendant as requiring a highly structured environment, such as full incarceration would provide, to bring focus and order to the defendant's life. The court obviously did not consider a community-based alternative sentence as meeting either the defendant's long-standing problems or society's needs. The defendant, moreover, did not show why or how her needs could better be served by remaining in the community. We cannot say that the trial court abused its considerable discretion in denying community corrections sentencing.

All things considered, we conclude that the trial court was warranted in rejecting all forms of alternative sentencing short of total confinement for this defendant. For these reasons, we affirm the trial court's judgment sentencing the defendant to seven years in confinement as a Range I standard offender.

_____
JAMES CURWOOD WITT, JR., JUDGE

-11-