# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 3, 2004 Session

## STATE OF TENNESSEE v. SANDY MARIE MCKAY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-C-1292    Cheryl Blackburn, Judge**

---

### No. M2002-03066-CCA-R3-CD - Filed March 12, 2004

---

The Defendant, Sandy Marie McKay, pled guilty to attempted aggravated child neglect, a Class B felony. After a hearing, the trial court sentenced the Defendant as a Range I standard offender to nine years in the Department of Correction. The Defendant now appeals, contesting both the length and manner of service of her sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

David A. Collins, Nashville, Tennessee, for the appellant, Sandy Marie McKay.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Victor S. Johnson, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In January 2000, the Defendant was living with her boyfriend, Andre Webster, and their two children, daughter Tonatica and son Deandre. Tonatica was two years old at the time; Deandre was five months old. The Defendant was employed at a fast-food restaurant.

One of Deandre's aunts visited the Defendant's apartment and determined that Deandre needed medical care. She took him to the hospital, and he was treated by pediatrician Dr. Aida Yared. Dr. Yared testified that Deandre was "very malnourished." Upon admission, Deandre weighed only seven pounds, two ounces; at birth he had weighed six pounds, ten ounces. Dr. Yared testified that a five-month-old infant "should have doubled their weight from what it was at birth on an average." Her examination of the child indicated that the baby had initially gained weight normally, but then lost most of his fat. In her opinion, Deandre had been suffering from malnutrition for a period of approximately three months. She further testified that there was "no obvious physical

reason" for his failure to thrive and that, during his treatment at the hospital, he "was very willing to feed and was swallowing properly, was not vomiting other than normal baby spit-up and did not have any diarrhea." In Dr. Yared's opinion, the baby had suffered from child neglect and could have died had the aunt not intervened.

Detective Kristin Vanderkooi Dyer testified that she interviewed the Defendant about Deandre's condition. Det. Dyer stated that the Defendant told her "a couple of different things" about the baby's condition. Det. Dyer testified that the Defendant told her "that the child appeared to be allergic or unable to digest a certain kind of formula that she had been feeding the child, and then she also said that sometimes they run out of food in the house and that she feeds Deandre bottles of water." Det. Dyer further stated that the Defendant told her that Deandre had seemed to be growing fine for the first couple of months but began to "look skinny" in his third month. At that point, the Defendant told her, Deandre began having trouble digesting the food she was giving him. She had not taken him to a doctor because, when she tried earlier to take him in for his shots, she was turned away because Deandre did not have a TennCare card. The Defendant also told Det. Dyer that, after Deandre became so skinny, she was afraid to take him to the doctor for fear that she would get in trouble.

Det. Dyer saw Tonatica during her visit to the Defendant's home and testified that she appeared "fine."

Dr. Geraldine Bishop testified that she is a clinical and developmental psychologist. She examined the Defendant in May 2002. Dr. Bishop testified that her assessment of the Defendant established that the Defendant is mildly mentally retarded with a full-scale IQ of 70, has deficits in intellectual behavior, deficits in adaptive behavior, and has attention deficit disorder. Other proof established that the Defendant's live-in boyfriend, Deandre's father, is also mentally retarded with a full-scale IQ of 59.

The presentence report reflects that at the time of sentencing the Defendant was twenty-three years old and unmarried. Although the information was not verified, the Defendant reported that she completed the eleventh grade in school and had worked toward obtaining a GED. She reported being physically and sexually abused as a child. She had been employed at three different fast-food restaurants during the two-year period preceding her arrest and incarceration for the instant offense.

The presentence report further reflects that the Defendant's criminal history includes convictions for misdemeanor assault, driving on a suspended license, and child neglect. In this case, as set forth above, the Defendant pled guilty to attempted aggravated child neglect, a Class B felony. See Tenn. Code Ann. §§ 39-15-402(b), 39-12-107(a). Her plea left sentencing to the trial court's discretion. The Defendant was sentenced as a Range I offender, which subjected her to a sentencing range of eight to twelve years. See id. § 40-35-112(a)(2).

In determining the length of the Defendant's sentence, the trial court applied three enhancement factors: (a) the Defendant has a previous history of criminal convictions or criminal

behavior in addition to those necessary to establish the appropriate range; (b) the victim was particularly vulnerable because of age; and (c) the Defendant abused a position of private trust. See id. § 40-35-114(2), (5), (16). In mitigation, the trial court found that the Defendant suffered from a mental or physical condition that reduced her culpability. See id. § 40-35-113(8).[1] On the basis of these factors, the trial court sentenced the Defendant to nine years. The trial court further ordered that the Defendant serve this sentence in the Department of Correction.

The Defendant contends on appeal that the trial court erred in applying all three enhancement factors, and that an additional mitigating factor should have been applied, to wit, that the Defendant committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated her conduct. See id. § 40-35-113(11). The Defendant avers that she should have received an eight-year sentence, the minimum in her range, and that she should have been ordered to serve her sentence on probation or community corrections. The State contends that the trial court's sentence should be affirmed.

Before a trial court imposes sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 app. (Tenn. 1998). We will

---

[1]The statutory language for this factor provides for mitigation where "[t]he defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense." Tenn. Code Ann. § 40-35-113(8) (emphasis added). Here, the trial court specifically found that the Defendant's mental condition reduced her culpability, but not "significantly."

uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

The Defendant was convicted of a Class B felony. The presumptive sentence for a Class B felony is the minimum sentence in the applicable range, increased as appropriate for applicable enhancement factors and then reduced as appropriate for mitigating factors. See Tenn. Code Ann. § 40-35-210(c), (e). Provided the trial court complies with the purposes and principles of the Criminal Sentencing Reform Act of 1989 and its findings are adequately supported by the record, the weight afforded to enhancement and mitigating factors is left to the trial court's discretion. See State v. Souder, 105 S.W.3d 602, 606 (Tenn. Crim. App. 2002).

Here, the trial court applied three enhancement factors. The Defendant contends that the trial court erred in applying the first of these, that she has a history of criminal convictions or behavior, because her criminal record is not "serious." The Defendant cites to no authority for this contention, and this issue is therefore waived. See Tenn. Ct. Crim. App. R. 10(b). Moreover, it is without merit. The enhancement factor for previous criminal history has no requirement that the prior convictions be for "serious" offenses. Furthermore, we decline to adopt the Defendant's assertion that a misdemeanor assault conviction and a misdemeanor neglect conviction are not "serious." The trial court did not err in applying this enhancement factor in determining the Defendant's sentence.

The Defendant contends that the trial court erred in applying the enhancement factor for the victim's particular vulnerability, arguing that "this factor is meant to deal with cases where a victim is induced to do something or lured into a situation that because of the victim's age or physical or mental disability the perpetrator possessed an unfair advantage." Again, the Defendant cites no authority in support of this proposition, and the issue is therefore waived. See Tenn. Ct. Crim. App. R. 10(b). Moreover, the Defendant's argument is without merit. Our supreme court has determined that this enhancement factor is applicable where "the circumstances show that the victim, because of his [or her] age or physical or mental condition, was in fact 'particularly vulnerable,' i.e., incapable of resisting, summoning help, or testifying against the perpetrator." State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). The State has the burden of proving the victim's particular vulnerability. See id. The State must also demonstrate that the victim's particular vulnerability was a factor in the commission of the offense. See State v. Butler, 900 S.W.2d 305, 313 (Tenn. Crim. App. 1994).

In this case, the State carried its burden of proving that, due to his age, the infant victim was "particularly vulnerable" to the offense of child neglect and that his age and concomitant inability to feed himself was a factor in the Defendant's commission of the offense through inadequate feeding. See State v. Rodney J. McDougle, Sr., No. 02C01-9707-CR-00242, 1998 WL 485613, at *2 (Tenn. Crim. App., Jackson, Aug. 18, 1998) (holding that the particularly vulnerable enhancement factor applied to the defendant's sentence for reckless homicide, caused by the defendant's shaking

-4-

a four-month-old infant, because "the victim had an incapacity to resist or to summon help and could not testify against the Defendant."). The trial court properly applied this enhancement factor to the Defendant's sentence.

With respect to the trial court's application of the enhancement factor for abuse of a private trust, the Defendant contends that this factor "applies to cases involving . . . private officials say in the case of a private fiduciary or cases involving the employment of special skills as in the case of an accountant who through his skills hides his embezzlement from his employer." Again, the Defendant cites to no authority for this rather restrictive interpretation of this enhancement factor, and her contention is thereby waived. See Tenn. Ct. Crim. App. R. 10(b). Moreover, it is without merit. Our supreme court has declared that where "the adult perpetrator and minor victim are members of the same household, the adult occupies a position of 'presumptive private trust' with respect to the minor." State v. Gutierrez, 5 S.W.3d 641, 645 (Tenn. 1999). In this case, the infant victim was in the care and custody of the Defendant. The Defendant neglected her son to the extent that he was in danger of starving to death. In so doing, she abused her position of private trust. The trial court properly applied this enhancement factor.

The Defendant next complains that the trial court failed to apply as a mitigating factor that the Defendant "committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct." Tenn. Code Ann. § 40-35-113(11). We agree with the Defendant that, given her intellectual limitations, the trial court should have applied this mitigating factor. However, we do not thereby conclude that the Defendant is entitled to a reduced sentence. On the basis of the three enhancement factors and two mitigating factors, a one-year increase over the minimum sentence is appropriate. We find no error in the trial court's imposition of a nine-year sentence.

The Defendant also challenges the manner in which she was ordered to serve her sentence. Because she was convicted of a Class B felony, she is not entitled to a presumption in favor of an alternative sentence. See Tenn. Code Ann. § 40-35-102(6). Moreover, because she was sentenced to a term of nine years, she is not eligible for probation. See id. § 40-35-303(a). She is, however, eligible for community corrections because she would otherwise be sentenced to incarceration; she was convicted of a non-violent felony; no weapon was involved; she does not demonstrate a pattern of violent offenses or behavior; and she was not sentenced to incarceration or on escape at the time of sentencing. See id. § 40-36-106(a)(1)(A)-(F), (2);[2] State v. Selina G. Harrelson, No. W1999-00521-CCA-R3-CD, 2000 WL 1051854, at *9 (Tenn. Crim. App., Jackson, July 28, 2000).

The trial court did not consider the Defendant's suitability for a community corrections sentence, incorrectly concluding that the Defendant was not eligible for it because of the nature of

---

[2]We recognize, of course, that persons convicted of those felony offenses against persons set forth in title 39, chapter 13, parts 1-5 of our criminal code are not eligible for a community corrections sentence. See Tenn. Code Ann. § 40-36-106(a)(1)(B). Although it is a crime against the person of another, attempted aggravated child neglect does not belong to the designated group of offenses which preclude eligibility for a community corrections sentence. See id. § 39-15-402.

the charge and the length of her sentence.  Accordingly, we must examine the record with respect to this issue <u>de</u> <u>novo</u> with no presumption of correctness attached to the trial court's denial of this sentencing alternative.

A defendant may properly be denied an alternative sentence, that is, ordered to serve his or her sentence in confinement, where the proof establishes the need to protect society by restraining a defendant with a long history of criminal conduct; to avoid depreciating the seriousness of the offense, or to effectively deter others who are likely to commit similar offenses; or where less restrictive measures have frequently or recently been applied unsuccessfully to the defendant.  <u>See</u> Tenn. Code Ann. § 40-35-103(1)(A)-(C).  The defendant's potential for rehabilitation (or lack thereof) should also be considered when determining whether an alternative sentence is appropriate.  <u>See</u> <u>id.</u> § 40-35-103(5).

Here, the Defendant does not have a long history of criminal conduct.  We view the Defendant's offense, however, as very serious.  Moreover, the Defendant has previously been placed on probation for child neglect, yet now stands convicted of attempted aggravated child neglect.  Thus, we conclude that her potential for rehabilitation is poor.  In sum, we deem incarceration to be the appropriate manner of service of the sentence for this Defendant on this conviction.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE