IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 24, 2009 Session

## STATE OF TENNESSEE v. RICHARD ELLIS STAPLETON

**Appeal from the Circuit Court for Jefferson County**
**No. 8919    O. Duane Slone, Judge**

---

**No. E2008-01776-CCA-R3-CD - Filed November 10, 2009**

---

The Defendant, Richard Ellis Stapleton, was convicted on his guilty pleas of attempted especially aggravated robbery, a Class B felony; especially aggravated burglary, a Class B felony; and two counts of facilitation of especially aggravated kidnapping, a Class B felony. The trial court imposed concurrent, Range I, twelve-year sentences to be served in the Department of Correction. In this appeal, the Defendant challenges the length of the sentences. We modify the sentences for attempted especially aggravated robbery and especially aggravated burglary to eleven years each and modify the sentences for facilitation of especially aggravated kidnapping to nine years each.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed as Modified**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

C.E. Bud Cunningham, Morristown, Tennessee (on appeal); and R. B. Baird, III, Rogersville, Tennessee (at trial), for the appellant, Richard Ellis Stapleton.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; James B. Dunn, District Attorney General; and Charles L. Murphy, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant's convictions relate to his participating in a scheme to steal a safe containing currency during a home invasion burglary. At the guilty plea hearing, the State recited the following facts:

> Your Honor, the facts in this case would show that on November 13th of 2006, deputies were called to the home of Roy and Wanda Taylor here in Dandridge where the Taylors had been the victims of an apparent botched robbery. . . . [T]he officers saw that it

appeared to be two individuals injured. Ms. Taylor had a broken leg. Mr. Taylor had been shot. Upon their investigation [the officers] learned that two individuals, Randall Hall and Miranda Briscoe, went to the Taylors' home trying to use the phone, forced their way in and tied up Ms. Taylor, resulting in her breaking her leg and Mr. Taylor [being] shot. Mr. Taylor also pulled a firearm and shot the female defendant as she left and fled from the home. They did not get anything from the robbery.

Upon them leaving, they went down to the Texaco station next to the – or the old Texaco station next to where the victims lived, and were picked up by this defendant, Mr. Stapleton.

Upon an investigation done by Chief Deputy Bud McCoig with the sheriff's department and the TBI as well as the D.A.'s office, Chief McCoig did track down [the Defendant]. He tracked him down and obtained a statement from him, in which Mr. Stapleton admitted to his involvement in the planning of this robbery. He stated in the statement he gave to the officers that he knew the victims. Apparently the victim [sic] had paid him recently a large sum of money. He had spoken to a Rusty Denton who started inquiring about the victims. [The Defendant] advised Mr. Denton who the victims were, and that it would be [the Defendant's] position that at that point Mr. Denton made arrangements for Mr. Hall and Ms. Briscoe as well as [the Defendant] to plan a robbery of the victims to obtain some more money. They believed there was a safe in the house.

[The Defendant gave] a statement that he let them out. He received a call shortly thereafter in which he picked them up and the female had a gunshot wound and he learned of the botched robbery and they all fled at that point.

Upon further investigation the officers uncovered that Ms. Briscoe did give a statement that [the Defendant] was involved in the planning of the robbery. And it would be her statement that . . . [the Defendant] actually gave the weapon to Mr. Hall and told Ms. Briscoe and Mr. Hall who the victims were and what their names were.

At the sentencing hearing, the State presented proof that the Defendant was involved in stealing a truck in Cocke County but was not charged with this offense. According to the statements of the Defendant and Ms. Briscoe, which were offered as an exhibit by the State, the Defendant drove Mr. Hall and Ms. Briscoe to a Lowe's store in order to steal a truck to use in the robbery attempt. According to the State's proof, however, Mr. Hall saw someone he knew at Lowe's and the Defendant took Hall and Briscoe to a Cracker Barrel, where Mr. Hall stole a truck. Ms. Briscoe's

statement also provided that she was an employee of the Defendant and that he approached her to participate in the crime with a promise that she would receive an equal share of $63,000 that was stored in the Taylors' safe if she would participate in the criminal venture with the Defendant and Mr. Hall. Ms. Briscoe also stated that the Defendant provided the weapon that was used in the offense and that the Defendant made sure the victims were at home before Mr. Hall and Ms. Briscoe went to their home.

The State presented proof through the Defendant's statement that the Defendant provided information to an uncharged fourth person, Eddie Rusty Denton, about Mr. Taylor having a large amount of money in a safe in his home. The Defendant claimed in his statement that Mr. Denton participated in planning the crime and that the Defendant provided information about the layout of the Taylor home and the location of the safe. The Defendant admitted in his statement that he called the Taylor home to see whether Mr. Taylor was present and that he provided transportation to steal the truck for Hall and Briscoe to use to get away from the Taylor home after the crimes were committed.

The State also offered proof through the presentence report that the Defendant had two prior convictions. One conviction was for criminal responsibility for misdemeanor theft from 2002. The other conviction was for misdemeanor assault from Florida in 1996. The State also noted that the Defendant was charged with some Class A felonies with mandatory prison time but that the Class A felonies had been reduced to Class B felonies as part of the plea agreement.

Roy Taylor testified at the sentencing hearing that he had known the Defendant since the Defendant was about eight years old and that the Defendant's father had been a good friend and employee of his. Mr. Taylor said that for the two years since the crime, he and his wife had experienced "nothing but misery." He said that they had incurred over $400,000 in uninsured medical bills, that his wife had upcoming hip replacement surgery, and that he could lift one of his arms only half-way since he was shot during the crime. He said that his wife had suffered greatly, that she was resuscitated three times after her injuries, and that she continued to cry and be in pain at night. She said that his wife was frightened and would scream and yell when someone pulled into their driveway.

The Defendant testified on his own behalf. He stated that he lived with his wife, his youngest daughter, and his mother and that he owned a car repair and detailing business. He stated that he worked six days a week and made about $4,000 a month. He said that he had not been charged with any offenses since his arrest in November 2006, some eighteen months earlier. The Defendant denied using alcohol or drugs and denied giving Mr. Hall some pills on the day of the crime.

The Defendant testified that he and Rusty Eddie Denton were partners in a car lot at the time of the crime. The Defendant said that after he purchased a safe from Mr. Taylor and Mr. Taylor had come to the car lot to pick up the Defendant's payment for his trailer and property, Mr. Denton began asking the Defendant questions. The Defendant stated that Denton called him and wanted the Defendant to participate in a robbery of the Taylors and that Denton wanted the Defendant to go to the Taylors' home because his presence would help the participants gain entry into the home. The Defendant claimed that when he refused to do so, Denton said, "[Y]ou would hate to see something

happen across the street," referring to the Defendant's detail business and home. The Defendant said he interpreted this as a threat. He said that Denton then told him that he should drive the truck and drop off and pick up the others who would participate in the crime, and he acknowledged that he agreed to be the driver. The Defendant said that he wanted to alert the authorities or Mr. Taylor but that he was afraid Denton would go through his cell phone to see what numbers he had dialed. He described Denton as a "stone cold killer." He said that the gun used in the crime was one that Denton kept in a desk at the car lot.

The Defendant said that he picked up Hall and Briscoe at a gas station. He said that Briscoe had been shot and that he took both of them to his detail shop. He said that Hall went across the road to the car lot and left with Denton and that his sister-in-law took Briscoe to his sister-in-law's home. He identified Hall as Denton's son-in-law.

The Defendant testified that he did not check on Mr. Taylor after everyone left the businesses because the Defendant was "hysterical." He acknowledged that he took Hall to Atlanta on Denton's instructions. He admitted that he returned to Newport but then fled to Lexington, North Carolina "because [his] family was at stake." He said that he spoke with the authorities voluntarily after they came to his sister's home in North Carolina. He said that he agreed to go back to Tennessee with the authorities. He said he admitted to them that Denton tried to convince him to participate with Hall in a robbery in Maryville about a week before the present crime but that he had convinced Hall not to go through with it. He said that he also tried to talk Hall out of the robbery of the Taylors' home but that "there just wasn't no talking to Randall [Hall] that day." He said that he provided the authorities with the information he had about Hall's and Briscoe's whereabouts and that he assisted the authorities in recovering the gun, which had been discarded along the interstate.

The Defendant said that his business was "shot up" while he was in jail for eight days. He said that had anyone been at his home sitting on the couch at the time, he or she would have been killed. He said that since being released on bond, he had been working. He said that he was also the pastor of a church in Morristown.

The Defendant testified that he had borrowed money from Mr. Taylor. He said that Taylor was the type of person who would have given him the shirt off his back. He apologized to the victims. He said that he wanted to accept responsibility for his actions and that his only involvement had been driving. He said that he could pay $500 a month toward restitution of the victims' medical bills.

The Defendant testified that contrary to what Ms. Briscoe said in her statement, she was not employed by him at the time of the crime. He said that he had terminated her employment about two months earlier when she came to work intoxicated.

Dreama Stapleton, the Defendant's wife, testified that she and the Defendant lived with the Defendant's mother and "their" daughter, noting that although they both had children, they did not have children together. She said that the Defendant was a good husband and worker and that she had never seen him be violent. She acknowledged that the Defendant had been the subject of a DCS investigation regarding an assault of one of their daughters but said that the case was dismissed.

-4-

After receiving the evidence, the trial court found that the sentences for the two convictions of facilitation of especially aggravated kidnapping convictions should be enhanced by the following factors:

> (1)     The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;
> . . .
> (10)     The defendant had no hesitation about committing a crime when the risk to human life was high;
> . . . [and]
>
> (14)     The defendant abused a position of public or private trust . . . .

T.C.A. § 40-35-114(1), (10), (14) (2006) (amended 2007). The court applied these three factors as well as the factor that "[t]he offense involved more than one (1) victim" to the attempted especially aggravated robbery sentence. See id. at (3). For the especially aggravated burglary sentence, the court applied enhancement factors for the Defendant's criminal history, the use of a weapon in the offense, the high risk to human life, and the abuse of a position of private trust. See id. at (9) ("The defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense[.]"). The court applied mitigation to the sentences for the Defendant's assistance to the authorities but noted that the Defendant had received the benefit to which this was entitled in the plea agreement, which permitted him to plead guilty to lesser-included offenses. See id. § 40-35-113(9) ("The defendant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses[.]"). The court imposed sentences of twelve years for each of the four offenses, to be served concurrently as a Range I offender.

On appeal, the Defendant argues that the sentences imposed are too lengthy. He contends that the trial court erred in its application of enhancement factors, in weighing his past criminal record, and in relying on evidence of uncharged misconduct. The State concedes that the trial court erred in relying on the enhancement factor for high risk to human life but contends that the remaining enhancement factors support the maximum sentences imposed.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d), -402(d) (2006). This presumption of correctness is conditioned upon the affirmative showing that the trial court considered the relevant facts, circumstances, and sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). As the Sentencing Commission Comments to section 40-35-401(d) note, the burden is now on the appealing party to show that the sentence is improper.

Enhancement Factor (1) - Defendant's Prior Criminal History

The Defendant argues that the State improperly relied upon dismissed charges and uncharged misconduct in urging the trial court to enhance the Defendant's sentences. The trial court stated in its findings, "[T]his defendant has been convicted of two crimes in the past. Though they are misdemeanors, the Court does note that one is a crime of violence and one is a crime of theft." The presentence report reflects that the Defendant had two such convictions. Although the State argued for enhancement based upon evidence of additional criminal activity, the record does not reflect that the court relied upon anything other than the two convictions when applying this enhancement factor to all four convictions.

Enhancement Factor (3) - The Offense Involved More Than One Victim

The trial court enhanced the especially aggravated robbery sentence based upon the offense involving more than one victim. The Defendant contends that this factor "is not applicable to the instant case because separate convictions were obtained for the crime against each victim with regard to the especially aggravated kidnapping charge." The record reflects that the court applied this factor only to the attempted especially aggravated robbery count for which Mr. Taylor was the victim named in the indictment. The proof demonstrates that Mrs. Taylor was also present and was a victim of this crime, but the robbery charge relative to her was dismissed as part of the plea agreement. However, our supreme court has said that this enhancement factor may be applied only to an offense involving more than one victim, not to offenses in which there is a specific, named victim. State v. Imfeld, 70 S.W.3d 698, 705-06 (Tenn. 2002). In the present case, the indictment named Mr. Taylor as the victim of the offense. The trial court erred in applying this enhancement factor to the especially aggravated robbery conviction.

Enhancement Factor (10) - No Hesitation About Committing A Crime When The Risk to Human Life Was High

We agree with the Defendant's argument and the State's concession that the trial court erred in its application of enhancement factor (10) with respect to the facilitation of especially aggravated kidnapping convictions. The indictment reflects that the counts which resulted in the two facilitation of especially aggravated kidnapping convictions alleged that the offenses were accomplished through the use of a firearm. In fact, the use of a firearm is an element of the offense. See T.C.A. § 39-13-305 (2006) (especially aggravated kidnapping). This court has said that there is always a high risk to human life when a firearm is used. See, e.g., State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995). We disagree, however, that factor (10) was also erroneously applied to the attempted especially aggravated robbery and especially aggravated burglary sentences. Although our supreme court has said that risk to human life is an essential element of especially aggravated robbery, the court has not prohibited the use of the enhancement factor when the person facing danger is someone other than the victim of the offense. See State v. Reid, 91 S.W.3d 247, 312 (Tenn. 2002). The Defendant was convicted of attempted especially aggravated robbery of Roy Taylor. He was not convicted of the count of the indictment pertaining to this crime against Wanda Taylor. The trial court noted, as well, that the Defendant's co-defendant, Ms. Briscoe, was shot during the offense. Thus, the trial court did not err in enhancing his sentence based upon the danger posed to Mrs.

Taylor and the co-defendants. With respect to especially aggravated burglary, that offense requires burglary of a habitation or other building in which a victim suffers serious bodily injury. Our supreme court has said that evidence of high risk to human life does not establish serious bodily injury, meaning that this factor may be applied to factually appropriate especially aggravated burglary sentences. See State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994).

Enhancement Factor (14) - The Defendant Abused A Position of Private Trust

The Defendant does not challenge the application of this factor to his convictions, but our review is de novo. The record reflects that by virtue of the Defendant's personal relationship with Mr. Taylor, a lifelong family friend and his landlord, he had knowledge of the large amount of cash Mr. Taylor kept in his home and where he kept it. On the day of the crimes, he called Mr. Taylor under the pretext of inquiring whether Mr. Taylor had any rental homes available, while the true purpose was to ensure that Mr. Taylor was home in order for the robbery to go forward as planned.

Our supreme court has said that this factor is appropriate where the nature of the relationship between the defendant and the victim "promoted confidence, reliability, or faith." State v. Guitierrez, 5 S.W.3d 641, 646 (Tenn. 1999) (quoting State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996). When the Defendant exploits this vulnerability to commit the crime, application of the enhancement factor is appropriate. Guitierrez, 5 S.W.3d at 646. In Guitierrez, the female victim of voluntary manslaughter and the male defendant lived together. The court held that despite this relationship, the State failed to prove any abuse of the relationship in committing the crime. Id.

Similarly, in the present case, the record establishes that Mr. Taylor and the Defendant had a prior relationship. The Defendant knew that the victim kept cash and placed a call to him as a subterfuge to determine if the victim was home. However, the record reflects that Mr. Denton also saw the victim with a large amount of cash before the crimes were committed. We hold that the State did not meet its burden of proof with respect to this enhancement factor.

Upon our de novo review, we hold that the Defendant has overcome the presumptive correctness of the trial court sentencing determination. For all of his Class B convictions, the Defendant faces a Range I sentence of eight to twelve years. See T.C.A. § 40-35-112(a)(2). We consider the Defendant's prior criminal history and his lack of hesitation in committing a crime when the risk to human life was high in conjunction with the attempted especially aggravated robbery and especially aggravated burglary sentences. We consider only the enhancement factor for prior criminal history with respect to the facilitation of especially aggravated kidnapping convictions. We also take into account the Defendant's assistance to the authorities as slight mitigating proof.

We hold that the sentences for especially aggravated robbery and especially aggravated burglary should be modified to eleven years. The Defendant's prior crimes, like the present ones, involved theft and violence, but they were misdemeanors. Further, the firearm that increased the risk to human life was from the Defendant's business. Any proof that the Defendant assisted the

authorities days after the crimes were committed after having taken one of his co-defendants out of state and having fled to another state himself pales in comparison to the enhancement evidence.

With respect to the facilitation of especially aggravated kidnapping convictions, we hold that the proper sentences are nine years each. We base this determination on the Defendant's prior misdemeanors involving violence and theft and the light weight of the mitigation proof.

The Defendant's effective sentence is eleven years. In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed as modified.

_____

JOSEPH M. TIPTON, PRESIDING JUDGE