**STATE of Tennessee, Appellee,**

v.

**Mario GUTIERREZ, Appellant.**

Supreme Court of Tennessee, at Jackson.

Nov. 29, 1999.

Richard W. DeBerry, Camden, for appellant.

John Knox Walkup, Attorney General and Reporter, Michael E. Moore, Solicitor General, Michael J. Fahey, II, Assistant Attorney General, Nashville, G. Robert Radford, District Attorney General, John Overton, Assistant District Attorney, Savannah, for appellee.

*OPINION*

BIRCH, J.

The defendant, Mario Gutierrez, was convicted by a jury of voluntary manslaughter for shooting a female friend with whom he resided. He was sentenced to six-years imprisonment. He now challenges his sentence, contending that the intermediate court erred in holding that by shooting his friend, he abused a position of private trust. Tenn.Code Ann. § 40–35–114(15)(1997).[1] Thus, the issue we address is: Whether the defendant's "live-in" rela-

tionship with the adult victim justifies application of the "abuse of private trust" sentence enhancement factor?

Because we find error in the application of this enhancement factor to the facts of this case, we modify the sentence to four years. In an additional issue, the defendant questions the court's denial of alternative sentencing under Tenn.Code Ann. § 40–35–102(6)(1997). We find no error as to this issue.

I

The salient facts of record indicate that the defendant and the victim began their relationship in Texas and moved to Tennessee in the summer or fall of 1991. They had been having relationship problems and, at the time of the offense, the victim was planning to move back to Texas where she had family. Circumstantial evidence suggests that during the relationship, the defendant had abused the victim. Few other facts concerning their relationship appear of record.

At trial, the State presented evidence supporting the theory that the defendant became angry when the victim discussed termination of their relationship. He beat the victim and, ultimately, shot her. The defendant's theory was that on the night in question, January 12, 1992, the victim returned home from a friend's house late in the evening. Depressed and argumentative, she mentioned suicide; a fight ensued. The victim obtained a pistol; the defendant attempted to wrest it from her. In the struggle, the gun discharged, and the victim was wounded. She died two days later.

II

The jury convicted the defendant of voluntary manslaughter.[2] As a Class C felo-

---

1. Tenn.Code Ann. § 40–35–114(15) states: "The defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or the fulfillment of the offense."

2. "Voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in

ny, the range of punishment for voluntary manslaughter is three to six years. Tenn. Code Ann. § 40–35–112(a)(3)(1997). In sentencing the defendant, the trial court considered the fact that the defendant had no criminal background and acknowledged the presumptive minimum sentence of three years. The court enhanced the sentence under factor (9),[3] finding the use of the pistol to be "a very strong factor to be considered." It also found that factor (15) (abuse of a position of trust) applied to "a live-in situation ... involving domestic violence." In mitigation, the court considered the efforts of the defendant in summoning medical assistance. The court concluded that "the enhancing factors far, far outweigh any mitigating factors." The court imposed the maximum sentence of six years.

On appeal, the defendant did not contest the application of enhancement factor (9). Addressing factor (15), the Court of Criminal Appeals stated: "It is clear that members of a household are in a special position of trust with respect to one another.... Thus, we find the application of the enhancement factor found in 40–35–114(15) to be appropriate to this case." The Court of Criminal Appeals affirmed the six-year sentence of incarceration.

### III

■ Under the Tennessee Criminal Sentencing Reform Act of 1989, the trial court must first determine the appropriate range of punishment based on the severity of the offense and the defendant's prior criminal history. Tenn.Code Ann. §§ 40–35–105 to –109 (1997). The minimum sentence within the appropriate range becomes the presumptive sentence. Tenn. Code Ann. § 40–35–210(c)(1997). The trial court then considers enhancement and mitigating factors to determine the specific sentence to be imposed. Tenn.Code Ann. § 40–35–210(b)(5)(Supp.1998).

■ "The enhancement factors are set forth [in § 40–35–114] to identify those situations which justify a departure from the minimum penalties for each offense." Tenn.Code Ann. § 40–35–114 sentencing comm'n cmts (1997).[4] In other words, the legislature has determined that defendants who commit offenses to which the criteria of these enhancement factors apply are subject to increased penalties. See State v. Walton, 958 S.W.2d 724, 729 (Tenn. 1997). The State has the burden of proving any enhancement factors. See State v. Poole, 945 S.W.2d 93, 100 (Tenn.1997).

If the State satisfies its burden, the trial court may increase the sentence from the minimum as appropriate for the proven factors. The trial court may then reduce the sentence as appropriate for any relevant mitigating factors. Tenn.Code Ann. § 40–35–210(e)(1997).

If the sentence imposed is challenged on appeal, the appellate court must conduct a de novo review with a presumption that the determinations (including the application of enhancement factors) made by the trial court are correct.[5] Tenn.Code Ann. § 40–35–401(d)(1997); Poole, 945 S.W.2d at 96. The question before this Court—whether adults sharing a household are in a per se position of trust for purposes of Tenn.Code Ann. § 40–35–114(15)—is, however, a legal question which is reviewable de novo with no presumption of correct-

an irrational manner." Tenn.Code Ann. § 39–13–211(a)(1997).

**3.** Tenn.Code Ann. § 40–35–114(9)(1997) states: "The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense."

**4.** Likewise, mitigating factors indicating a reduced culpability are set forth in Tenn.Code Ann. § 40–35–113 (1997).

**5.** The exception to this presumption of correctness, where the record fails to demonstrate that the trial court considered these sentencing principles, does not apply in this case. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn.1991).

ness. *See State v. Wilkerson,* 905 S.W.2d 933, 935 (Tenn.1995).

## IV

■ The sentencing statute specifically provides that sentencing enhancement is justified where:

The defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or the fulfillment of the offense.

Tenn.Code Ann. § 40–35–114(15). Relying solely on the fact that the victim and the defendant lived together, the trial court found them to have shared a position of private trust. The trial court used this finding as the justification for applying Tenn.Code Ann. § 40–35–114(15) to enhance the sentence. The defendant contends that the application of enhancement factor (15) is unjustifiable and, consequently, that the resulting sentence constitutes error.

Though the abuse of a position of private trust enhancement factor has been discussed in several cases, this Court has not previously analyzed it in a case where both perpetrator and victim were competent adults.[6] We have, however, addressed this enhancement factor with regard to adult perpetrators and minor victims.[7] In those cases, the Court stated:

[Application of [this] factor requires a finding, first, that defendant occupied a position of trust, either public or private. The position of parent, step-parent, babysitter, teacher, coach are but a few obvious examples. The determination of

the existence of a position of trust does not depend on the length or formality of the relationship, but upon the nature of the relationship. Thus, the court should look to see whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith.

*State v. Kissinger,* 922 S.W.2d 482, 488 (Tenn.1996).

Where the adult perpetrator and minor victim are members of the same household, the adult occupies a position of "presumptive private trust" with respect to the minor. Indeed, this Court expressed in *Carico,* that "there can be no question that the rape of a child residing in the family is an abuse of private trust." *State v. Carico,* 968 S.W.2d 280, 286 (Tenn.1998).

The doctrine of "presumptive private trust" furnishes a workable analysis in adult perpetrator/minor victim cases because minors, in a general sense, are limited in their judgment. But the application of this analysis, in cases where both the perpetrator and the victim are competent adults may lead to unwarranted results. In this regard, we observe that adult victims are generally held to have reasonable judgment and, unlike minors, can generally function reasonably independently. It follows that to use the mere sharing of a household or the existence of a relationship to determine whether a position of private trust exists between competent adults can result in an overly-broad application of the enhancement factor.[8] The mere existence of such a relationship does not render that perpetrator more culpable

---

6. The Court of Criminal Appeals has found that a personal relationship between two competent adults may create a position of trust. *See State v. Jackson,* 946 S.W.2d 329 (Tenn.Crim.App.1996); *State v. Franklin,* 919 S.W.2d 362 (Tenn.Crim.App.1995).

7. *See, e.g., State v. Adams,* 864 S.W.2d 31, 34 (Tenn.1993) (holding that the defendant's status of live-in boyfriend of the mother of his victims placed him in a position of private trust). *See also State v. Kissinger,* 922 S.W.2d

482, 488 (Tenn.1996); *State v. Carico,* 968 S.W.2d 280, 286 (Tenn.1998).

8. If a relationship in which two adults live together is a position of presumptive private trust, a fortiori, such a presumption should apply to husband and wife residing together. But *common experience* teaches that relationships vary, and great difficulty arises from sincere efforts to categorize any relationship, for things are not always as they seem.

than one who has a different relationship or no relationship with the victim.[9]

As stated in *State v. Kissinger*, to determine the application of the private trust factor, the court must look to "the nature of the relationship," and whether that relationship "promoted confidence, reliability, or faith." *State v. Kissinger*, 922 S.W.2d at 488. A relationship which promotes confidence, reliability, or faith, usually includes a degree of vulnerability. It is the exploitation of this vulnerability to achieve criminal purposes which is deemed more blameworthy and thus justifies application of the enhancement factor. Accordingly, factor (15) is construed to apply only where there is evidence that the nature of the relationship between the perpetrator and the adult victim caused the victim to be particularly vulnerable.[10] If such a relationship or "private trust" is shown, the State must then prove that the perpetrator abused that relationship in committing the crime. As with all determinations regarding the application of an enhancement factor, the utilization of this analysis "is a task that must be undertaken on a case-by-case basis." *Poole*, 945 S.W.2d at 96.

Turning to the record before us, aside from the fact that the defendant and the victim lived together, details concerning the nature of their relationship are meager; facts concerning the existence of a relationship which promoted a reliance, confidence, and faith that created a vulnerability on the part of the adult victim are nonexistent. Because nothing in the record supports a finding that the defendant occupied a position of private trust (for purposes of enhancement) with respect to the victim, the State has not met its burden of proving that this enhancement factor should be applied. Therefore, the application of this enhancement factor was error.

## V

In the case of error, this Court has the authority to modify the sentence pursuant to Tenn.Code Ann. § 40–35–401(c)(2) (1997).[11] The only enhancement factor found to be valid in this case, is factor (9). In regards to factor (9), the trial court held, perhaps in anticipation of a successful challenge to the use of factor (15), the following:

> The Court finds that Number 9, even standing alone, would be appropriate under the facts and circumstances in this case (that is the use of a firearm) ... to enhance [the sentence] to the maximum within the range.

This holding is reviewed de novo with a presumption of correctness. Tenn.Code Ann. § 40–35–401(d).

The defendant not only asserts that enhancement factor (9) is an inadequate basis to impose the maximum sentence, but also insists that the mitigating factors are strong. He suggests that the sentence should be mitigated because he does not have a history of criminal behavior and because he presented favorable testimony concerning his character and standing in the community at the sentencing hearing. He asks this Court to reduce his sentence to three years.

The lack of a criminal history is appropriately considered in mitigation.

---

9. It has been held that no reason can be discerned for finding the murder of a defendant's family member "any less culpable than the murder of a stranger." *State v. Stenson*, 132 Wash.2d 668, 940 P.2d 1239, 1284 (1997). The reverse is also true; other things being equal, the murder of a family member is no more culpable than the murder of a stranger.

10. A certain amount of confidence, reliability, or faith (and vulnerability) may exist between persons with minimal or no prior contact, for instance, in circumstances which prompt someone to seek help from a stranger because of a flat tire, a missed bus, or a medical emergency. This type of relationship does not support the application of the enhancement factor.

11. "If a sentence is appealed, the appellate court may ... [a]ffirm, reduce, vacate or set aside the sentence imposed." Tenn.Code Ann. § 40–35–401(c)(2).

*See, e.g., State v. Pike,* 978 S.W.2d 904, 918 (Tenn.1998). And indeed, the defendant presented much evidence that he was respected, trusted, and liked by the members of his church. Based on the one remaining enhancement factor, that the defendant used a firearm, and the mitigating factors that the defendant did not have a criminal history and was well regarded in his community, the Court modifies the sentence to four years.

## VI

 Additionally, the defendant argues that alternative sentencing was warranted rather than incarceration. The defendant was sentenced as a Standard Offender of a Class C felony. Defendants who do not possess "criminal histories evincing a clear disregard for the laws and morals of society" and are convicted of a Class C felony, are "presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn.Code Ann. § 40–35–102(5), (6)(1997). "Evidence to the contrary" that would overcome this presumption, may include evidence that confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses, or evidence that confinement is required to avoid depreciating the seriousness of the offense. *State v. Davis,* 940 S.W.2d 558, 560 (Tenn.1997); Tenn.Code Ann. § 40–35–103(1)(B)(1997).

Here, the trial court followed the principles of the Criminal Sentencing Reform Act of 1989. The trial court began its consideration of this issue by acknowledging that under the principles of sentencing, the defendant is presumed to be entitled to an alternative sentence. The court also considered the fact that the defendant had no prior record and that his social history was good. The court imposed a sentence of incarceration based on the need for deterrence.

The Court of Criminal Appeals did not address whether the need for deterrence was an appropriate basis for de-

nying an alternative sentence. Instead, the court found that incarceration was required in order to avoid depreciating the seriousness of the pervasive problem of domestic violence. *See* Tenn.Code Ann. § 40-35-103(1)(B). Generally, the nature of a crime, in this case domestic violence, "is not by itself, a sufficient basis for the denial of probation, where the legislature has provided the possibility of a suspended sentence." *State v. Cleavor,* 691 S.W.2d 541, 543 (Tenn.1985). In this case, however, trial testimony that the defendant acknowledged little culpability for his actions supports a finding that a sentence of confinement is necessary to avoid depreciating the seriousness of this crime.

## VII

Accordingly, and for the reasons above expressed, the judgment of the Court of Criminal Appeals is affirmed except for the sentence, which is hereby reduced to four years in the Department of Correction. The costs of this appeal are taxed to the State of Tennessee.

ANDERSON, C.J., and DROWOTA, HOLDER, BARKER, JJ., concur.