IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 2000 Session

## STATE OF TENNESSEE v. JAMES DAVID LAMOR PERRY

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S40,657      Phyllis H. Miller, Judge**

_____

**No. E1999-00271-CCA-R3-CD**
**September 5, 2000**
_____

Defendant James David Lamor Perry was convicted of two counts of possession of cocaine, more than .5 grams, within 1000 feet of a school, and one count of possession of marijuana. Defendant was fined and sentenced to 20 years on each cocaine possession count and to 6 months on the marijuana count, all sentences to run concurrently. On this direct appeal Defendant now raises numerous challenges to his convictions, including issues regarding the constitutionality and interpretation of the Drug-Free School Zone Act. Defendant also argues that his sentence for the cocaine possession counts is excessive. We find no error and affirm Defendant's convictions and sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**.

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

B.C. McInturff, Kingsport, Tennessee, for the appellant, James David Lamor Perry.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Robert H. Montgomery, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

JUDGE WOODALL  delivered the opinion of the court.

Defendant James David Lamor Perry was convicted by a Sullivan County jury of two counts of possession of cocaine, more than .5 grams, within 1000 feet of a school, and one count of possession of marijuana. Defendant now appeals as of right, and raises eight issues:

(1) Whether the Drug-Free School Zone Act, codified at Tenn. Code Ann. § 39-17-432, is constitutional;

(2) Whether there was probable cause for the stop of a vehicle in which Defendant was riding as a passenger;

(3) Whether Defendant's consent to a search of his apartment was voluntary;

(4) Whether the trial court erred when it refused to admit evidence regarding the normal hours of operation for Kennedy Elementary and Sevier Middle Schools, Kingsport;

(5) Whether the trial court erred when it did not instruct the jury that liability attaches under the Drug-Free School Zone Act only if the predicate drug crime occurs during normal school hours or activities;

(6) Whether the evidence is sufficient to support Defendant's conviction on the cocaine possession counts when the State did not prove that Defendant's crime occurred during normal school hours or activities;

(7) Whether the cocaine possession convictions must be merged because they constitute multiple punishments for one criminal act;

(8) Whether Defendant's sentence on the cocaine possession counts is excessive.

Although Defendant argues generally that the trial court erred when it failed to grant Defendant's motion for a new trial, we will address each issue raised in the motion for a new trial separately, and need not address this additional argument. After a careful review of the record and the applicable law we find no error, and affirm the judgment of the trial court.

## I. Facts

In early March of 1997 Detective David Quillen of the Kingsport Police Department received a page from a confidential informant. In a subsequent telephone conversation the informant told Quillen that he had been inside Defendant's residence at 101 Tennessee Street in Kingsport, and that he observed a large quantity of cocaine. Later the same day Quillen was paged again by the informant. This time the informant stated that Defendant would be delivering a quantity of cocaine, termed an "eight-ball," at the McDonald's on Lynn Garden Drive in Kingsport. The delivery was scheduled for approximately 10:15 P.M. on March 10, 1997. The informant also stated that Defendant would be accompanied by his girlfriend, Tammy Marshall, that the couple would be in a green Chevrolet Beretta, and that they would sell the "eight-ball" to one Rodney Pierson.

Quillen had received accurate information from this informant before, and thus on March 10, 1997, just after 10:00 P.M., Quillen and Detective David Street prepared to go the McDonald's on Lynn Garden Drive. First, they drove by Defendant's residence and observed a green Beretta. They returned to their office with the tag number, and Quillen confirmed that the car was registered to Marshall. Quillen and Street then proceeded to the McDonald's. When the officers were on Lynn Garden Drive they observed the green Beretta ahead of them in traffic. The Beretta turned into the McDonald's, and went through the drive through. The persons in the Beretta matched the informant's description of Defendant and Marshall. The officers let the Beretta go through the drive-through, then stopped the vehicle in front of McDonald's.

Detective Street approached the driver's side of the vehicle, and Detective Quillen went to the passenger side. Defendant was in the front passenger seat, Marshall was in the driver's seat, and the officers observed a napkin in Marshall's lap. Defendant acted very nervous, and he kept reaching as if to grab the napkin, but would then pull his hand back. At the same time, Defendant's right hand kept going underneath the seat. The officers ordered Defendant to keep his hands on the dashboard, but he did not comply, and the officers removed both Marshall and Defendant from the vehicle. When they did so the napkin fell on the front driver's seat of the car, and Detective Street observed what he thought were plastic baggies of cocaine inside the napkin. At this point both Defendant and Marshall were arrested. A subsequent search of the vehicle uncovered the remains of a marijuana cigarette in the car's ashtray. Both Marshall and Defendant were then transported to the city jail. Testing by the Tennessee Bureau of Investigation later showed that the baggies contained approximately 2.1 grams of cocaine.

At the jail Quillen interviewed Marshall first. She gave a statement in which she confessed to using marijuana and cocaine with Defendant at Defendant's residence at 101 Tennessee Street. She denied knowing why Defendant wanted to go the McDonald's that night; she claimed that Defendant placed the napkin in her lap when the Beretta was stopped at the McDonald's, and that she did not know what was in the napkin. She did acknowledge that she thought Defendant might be dealing drugs. Marshall refused to sign the first statement, and subsequently signed a second statement that amended the first. In the second statement Marshall asserted that on March 10, 1997, in the evening, she saw large quantities of powder and crack cocaine, as well as marijuana, at Defendant's residence at 101 Tennessee Street.

After obtaining Marshall's second statement Detective Quillen went to the interview room where Defendant was being held, and initiated a conversation. Quillen informed Defendant of the charges against him, described the content of Marshall's statement, and told Defendant that he thought that Defendant had more cocaine at Defendant's residence at 101 Tennessee Street. Quillen asked for consent to search the residence, and informed Defendant that if Defendant did not consent then the officers would seek a search warrant. Defendant signed a written consent to search and told the officers exactly where some cocaine and marijuana was located in the residence. The ensuing search, executed in the early morning hours of March 11, 1997, recovered approximately 11.4 grams of cocaine from a closet in Defendant's apartment, as well as a quantity of marijuana. After the search, at approximately 4:00 A.M., Quillen re-interviewed Defendant. Defendant signed a written waiver of his rights, and although he refused to make a written statement, Defendant discussed drug activity in Kingsport with Quillen. Defendant also confessed to being in possession of the "eight-ball" of cocaine found in the Beretta, and stated that he was taking the cocaine to the McDonald's to sell to Rodney Pierson. Defendant also told Quillen how he obtained his supply of cocaine (including that in the Beretta and in the residence), and confessed that the marijuana in the apartment was for his own personal use.

Defendant was indicted on two counts of possession of cocaine, more than .5 grams, within 1000 feet of a school, and two counts of possession of marijuana, less than .5 ounce.

At trial the State proved that the initial stop at McDonald's and Defendant's residence were both within 1000 feet of a school through the testimony of Jeff Fleming, an employee of the City of Kingsport. Fleming testified that he was Manager of Geographic Information Systems for the city, and that as such he was in charge of using and applying a computer mapping system to assist with planning of different city projects. Fleming testified that he used the city computer program to create two maps of the city of Kingsport with the schools highlighted, and that he used the computer to identify a 1000 foot buffer zone around each school. At trial Fleming used a marker to identify the location, on the maps, of the Lynn Garden Drive McDonald's restaurant, and the Defendant's residence at 101 Tennessee Street. The maps clearly show the McDonald's restaurant to be within the buffer zone of John F. Kennedy Elementary School, and Defendant's residence to be within the buffer zone for the Robinson Annex of John Sevier Middle School. Doyle Burdine, of the Kingsport City Schools, testified that both the Kennedy Elementary and Robinson Annex properties were in use as public schools on the date of Defendant's offense.

The jury convicted Defendant on both cocaine possession charges and the marijuana possession charge related to the marijuana at Defendant's residence. Defendant was acquitted of the marijuana possession charge stemming from the vehicle search. The jury fixed Defendant's fines at $5,000 and $20,000 for each respective cocaine charge and $500 for the marijuana charge. At sentencing the trial court adopted the jury's fines and in addition sentenced Defendant to twenty (20) years on each cocaine possession charge, and six (6) months for the marijuana count, with all sentences to be served concurrently.

## II. Analysis

Defendant raises nine issues in his appeal. We address each in turn.

### A. Constitutionality of Drug-Free School Zone Act, Tenn. Code Ann. § 39-17-432

Defendant argues that his conviction is invalid because the statute under which he was convicted, the Drug-Free School Zone Act, is unconstitutional. Defendant reasons that the statute (1) violates due process because it is vague, uncertain and indefinite; (2) violates due process because it is overbroad; and (3) violates separation of powers principles because the statute infringes upon the Governor's constitutional power to grant pardons and reprieves. We disagree.

Generally, the courts are charged with upholding the constitutionality of statutes when possible. State v. Joyner, 759 S.W.2d 422, 425 (Tenn. Crim. App. 1987) (citing Dykes v. Hamilton County, 191 S.W.2d 155, 159 (1945)). The first portion of the Drug Free Schools Act that is relevant to our inquiry is § 39-17-432(b):

> A violation of § 39-17-417, or a conspiracy to violate such section, that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school or

secondary school shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation.

Tenn. Code Ann. (1997). Here, Defendant was faced with two counts of possession of more than .5 grams of cocaine, which is a class B felony under § 39-17-417(c)(1). Because Defendant possessed the cocaine within 1000 feet of a school in both counts, Defendant was charged with and convicted of a class A felony on both counts under § 39-17-432(b).

Defendant asserts that the language of this subsection is impermissibly vague, uncertain and indefinite because a reasonable person could not read the statute and understand what activity is criminalized. However, this Court has previously ruled on this issue, and we have held that the language of the statute passes constitutional muster. See State v. Jenkins, 15 S.W.3d 914, 918 (Tenn. Crim. App. 1999); State v. Thomas D. Smith, No. M1999-00018-CCA-R3-CD, 2000 WL 549321, at *3-5, Robertson County (Tenn. Crim. App., Nashville, May 5, 2000), no Rule 11 application filed.

Defendant's second argument is that § 39-17-432(b) is overbroad, but Defendant has cited no authority supporting this proposition. As a result, the argument is waived. Tenn. Crim. App. R. 10(b); State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988). Waiver notwithstanding, we note that Defendant has not stated what constitutionally protected activity is encroached upon by the Act, and thus Defendant's legal argument is insufficient on its face. See Smith, 2000 WL 549321, at *3 (quoting State v. Forbes, 918 S.W.2d 431, 448 (Tenn. Crim. App. 1995)).

Finally, Defendant argues that the Act impermissibly infringes on the constitutional power of the Governor to grant pardons. Although the exact nature of Defendant's argument is somewhat unclear, we presume that the argument relates to § 39-17-432(e), which provides that:

> Nothing in the provisions of title 41, chapter 1, part 5 shall give either the governor or the board of paroles the authority to release or cause the release of a defendant sentenced for a violation of subsection (b) prior to service of the entire minimum sentence for such defendant's appropriate range of sentence.

Tenn. Code Ann. (1997). Title 41, chapter 1, part 5 of the Tennessee Code Annotated, entitled Reduction of Prison Overcrowding, gives the Governor the authority to reduce the release eligibility dates of persons incarcerated in the Department of Correction in order to alleviate prison overcrowding. See §§ 41-5-503, 504 (1997).

The plain language of § 39-17-432(e) makes it clear that this subsection has nothing to do with the Governor's pardoning power. In Tennessee the Governor has the power to grant pardons and reprieves to convicted persons except in cases of impeachment. Tenn. Const. art. III, § 6; Tenn. Code Ann. § 40-27-101 (1997). Defendant is correct in noting that the Governor's power is only limited by the language in the Tennessee Constitution, and the Legislature cannot take that power from the Governor's control. Carroll v. Raney, 953 S.W.2d 657, 659 (Tenn. 1997). The power at

issue in § 39-17-432(e), however, is not that set forth in the Constitution, but rather the additional power granted to the Governor by the Legislature in order to alleviate prison crowding. Section § 39-17-432(e) limits the power granted in § 41-5-504, and does not limit the pardon power set forth in article III, § 6. As a result, Defendant is not entitled to relief on this issue.

### B. Probable cause for stop and search of vehicle

Defendant next argues that Detectives Quillen and Street did not have probable cause to stop Marshall's vehicle at McDonald's. Defendant also argues that after the vehicle was stopped the detectives did not have probable cause to search the vehicle. Defendant thus contends that under the fruit of the poisonous tree doctrine Defendant's subsequent arrest and consent to search (for his residence) are both invalid because they are the byproduct of an illegal seizure and search.

As to the stop of the vehicle, we conclude that Defendant is not entitled to relief because the issue is waived. Although Defendant filed a pretrial motion objecting to the McDonald's stop, Defendant later withdrew the motion, and did not argue the validity of the stop at the suppression hearing. As a result, the trial judge never ruled on the issue. Moreover, Defendant did not raise this issue in his motion for a new trial. As a result, the issue is not properly before us on this appeal. See T.R.A.P. 3(e), 36(a); State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988).

As to the search of Marshall's car, Defendant also failed to raise this issue at the trial level, and thus this issue is also waived. See T.R.A.P. 36(a); Killebrew, 760 S.W.2d at 235. However, even if we addressed Defendant's claim on the merits, we think that Defendant is not entitled to relief on this issue. One who challenges the reasonableness of a search or seizure has the initial burden of establishing a legitimate expectation of privacy in the place or thing to be searched. State v. Oody, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991). One who does not have such an expectation of privacy lacks "standing" to challenge the search. See State v. Patterson, 966 S.W.2d 435, 441 n.5 (Tenn. Crim. App. 1997). There are seven factors to be considered when determining if a legitimate expectation of privacy exists: (1) ownership of the property, (2) whether the defendant has a possessory interest in the thing seized, (3) whether the defendant has a possessory interest in the place searched, (4) whether the defendant has a right to exclude others from that place, (5) whether he as exhibited a subjective expectation that the place would remain free from intrusion by the state, (6) whether Defendant took normal precautions to maintain his privacy, and (7) whether he was legitimately on the premises. Oody, 823 S.W.2d at 560.

Using these factors we do not think that Defendant has a legitimate expectation of privacy in Marshall's car. First, there is no evidence that Defendant had a subjective expectation of privacy in the car. Second, as Defendant points out in his brief, "he was not the owner of the vehicle, was not the driver of the vehicle, merely a passenger in it." Nor did defendant have any possessory interest in the car. Defendant does not have standing to challenge the search of Marshall's car, and had thus Defendant would not be entitled to relief on this issue. See Rakas v. Illinois, 439 U.S. 128 (1978).

### C. Validity of consent to search Defendant's residence

Defendant alleges that his written consent to search his residence at 101 Tennessee Street was invalid and the cocaine and marijuana seized during the search should have been suppressed. We do not agree, and affirm the trial court's holding that Defendant's consent was freely and voluntarily given.

The Fourth Amendment to the United States Constitution provides "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. Similarly, article I, section 7 of the Tennessee Constitution guarantees that "the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures . . . ." Tenn. Const. art. I, § 7. Unless it falls within a specifically established and well delineated exception, a search conducted without a warrant is per se unreasonable. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (citations omitted). Evidence discovered as a result of a warrantless search or seizure is subject to suppression unless the prosecution demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement. State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998).

One established and well recognized exception to the warrant requirement is a search that is conducted pursuant to consent. Schneckloth, 412 U.S. at 219. The burden of proof rests upon the State to show, by the preponderance of the evidence, that the consent to a warrantless search was given freely and voluntarily. Id. at 248-49; State v. Bartram, 925 S.W.2d 227, 230 (Tenn. 1996). The question of whether an accused voluntarily consented to the search is a question of fact which focuses upon the totality of the circumstances. Schneckloth, 412 U.S. at 248-49. In order to survive constitutional scrutiny consent to search must be unequivocal, specific, intelligently given, and uncontaminated by duress or coercion. State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992) (citing Liming v. State, 417 S.W.2d 769 (Tenn. 1967)).

This Court must uphold a trial court's findings of fact resulting from a suppression hearing unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The burden is on the defendant to demonstrate that the evidence preponderates against the trial court's findings. State v. Harts, 7 S.W.3d 78, 84 (Tenn. Crim. App. 1999). The question of consent and whether it was voluntarily given are questions of fact. State v. Ashworth, 3 S.W.3d 25, 29 (Tenn. Crim. App. 1999) (quoting State v. McMahan, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983)). However, the application of the law to the facts is a question of law which is reviewed de novo on appeal. Harts, 7 S.W.3d at 84.

Defendant's argument addresses the interaction between Detective Quillen and Defendant at the Kingsport jail after Defendant had been arrested. Defendant asserts that his consent to search was not voluntary because he was promised that giving consent would help his case, and because Quillen misrepresented the content of Marshall's statements.

At the suppression hearing Quillen's testimony established that after Defendant and Marshall were transported to the jail Quillen interviewed Marshall first. Marshall gave the two statements previously discussed, and then Quillen went to speak with Defendant. Quillen testified that he informed Defendant of the charges, told Defendant how Marshall's statements implicated Defendant, and indicated that he would like Defendant's consent to search Defendant's residence. Quillen also informed Defendant that the officers would obtain a search warrant if Defendant would not consent. According to Quillen, after some general conversation about the charges and other drug activity in Kingsport, Defendant agreed to sign the consent to search form, and told Quillen verbally where the drugs were located in Defendant's residence. Quillen also testified that Defendant informed Quillen that Defendant's parents were visiting, and staying in Defendant's residence, and Defendant was concerned about the effect that a police search in the middle of the night would have on his family.

Defendant testified at the suppression hearing that Quillen did inform him about the incriminatory nature of Marshall's statements. Defendant also testified that Quillen told Defendant that consenting to the search would make it easier on Defendant, and that if Defendant did not consent the officers would get a warrant, which would make it harder on Defendant. Defendant testified that as a result he signed the consent form and told Quillen where the drugs were. When the court questioned Defendant and asked him if he was trying to avoid a thorough police search with his parents in the house, Defendant acknowledged that "[t]hey told me they were going to tear the place up, and I didn't want to, I explained to them that I didn't want to put that on my parents."

At the conclusion of the suppression hearing the trial judge found that (1) the officers did not misrepresent the contents of Marshall's statements to Defendant, (2) Defendant had motive to consent to the search because his parents were staying in his home and he did not want the residence searched top-to-bottom in the middle of the night with his parents present, (3) Detective Quillen's testimony was credible, (4) Defendant's testimony was not credible, and (5) Detective Quillen did not make any promises of a specific outcome or result in Defendant's case in return for Defendant's consent to search. Accordingly, the trial judge held that Defendant consented to the search to alleviate strain on his parents, the consent was not obtained by misrepresentation, and that the consent was valid.

The evidence does not preponderate against these findings. Moreover, under the applicable law, these findings make clear that Defendant's consent was freely and voluntarily given. Defendant is not entitled to relief on this issue.

### D. Elements of drug possession within 1000 feet of a school under § 39-17-432

Defendant raises three issues that relate to the elements of the offense for which Defendant was convicted: (1) whether the trial court erred when it refused to admit evidence regarding the normal hours of operation for Kennedy Elementary and Robinson Annex; (2) whether the evidence is sufficient to support Defendant's conviction when the State did not prove that school operations or activities were in session when Defendant committed his offenses, and (3) whether the trial court erred when it did not include, in the jury charge, an instruction that criminal liability under the Drug-

Free School Zone Act does not attach unless the crime was committed during normal school hours or activities.

All three of these issues are premised on the assumption that the Drug-Free School Zone Act applies only when school is in session or when school-related activities are occurring at the school. This Court has rejected this argument before, and we reject it here as well. There is nothing in the language of the statute that indicates that the Legislature intended § 39-17-432 to have the limited application that Defendant suggests. As we have said,

> [c]hildren frequent school grounds outside the traditional classroom hours. Playgrounds and basketball courts provide year-round entertainment for children. Schools facilities host various after-school clubs and activities. Further, many schools conduct summer classes. Accordingly, the instruments of [drug] transactions and subsequent use, such as needles and other paraphernalia, likely to be left at the school grounds present hazards and distractions to students at all times.

Jenkins, 15 S.W.3d at 918. Moreover, during the legislative process an amendment was introduced in the Tennessee Senate that would have limited the application of the Act to crimes occurring during normal school hours and times during official school activities. Smith, 2000 WL 549321 at *7, n.6. This amendment was rejected. Id. We conclude that the conduct addressed in § 39-17-432 applies to all crimes enumerated in 39-17-417 regardless of the time of day or night they occur.

As a result, Defendant's claim regarding the admission of evidence must fail. Defendant argues that the trial court erred when it refused to allow testimony regarding the normal hours of operation for Kennedy Elementary and Robinson Annex. However, evidence is only admissible if it is relevant. Tenn. R. Evid. 402. Given that § 39-17-432 applies to all drug crimes enumerated in § 39-17-417, regardless of whether the respective school is in session, the evidence that Defendant sought to introduce regarding school operating hours was irrelevant, and thus inadmissible.

Likewise, Defendant's narrow challenge to the sufficiency of the evidence must also fail. When the sufficiency of the evidence is challenged on appeal the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under the interpretation of § 39-17-432 that we have set forth above the predicate drug crime need not occur during school hours or during school activities in order to be punishable under § 39-17-432, and thus the occurrence of the offense within school hours or during school activities is not an element of the crime. As a result, the State need not present any evidence at all regarding the time frame of the crime as regards to school hours, and the State's proof on this issue, if any, has no bearing on the constitutional propriety of Defendant's conviction.

Finally, Defendant's argument regarding the jury charge also fails. It is the trial court's duty to give a complete charge of the law applicable to the facts of the case. State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992). This includes a complete instruction of the elements of the offense. State v.

Brewer, 932 S.W.2d 1, 16 (Tenn. Crim. App. 1996). As previously stated, however, the crimes punishable under § 39-17-432 need not occur during school hours or activities, and thus the occurrence of the crime during school hours or activities is not an element of Defendant's offense. Accordingly, the times of school operation are not part of the law governing Defendant's case, and the jury need not have been instructed by the court regarding this issue.

### E. Merger of cocaine possession convictions

Defendant argues that the two counts of cocaine possession within 1000 feet of a school should be merged into one conviction because "the Defendant is the same person, the automobile is the same, co-defendant was the same, the drugs were the same, and the state cannot carve one episode into two or more offenses in order to pyramid punishment." Although Defendant's rationale is somewhat vague we interpret it to be an argument based on double jeopardy principles, or, in the alternative, due process issues analogous to those articulated by our Supreme Court in State v. Anthony. See 817 S.W.2d 299 (Tenn. 1991).

We do not think that Defendant is entitled to relief on this issue. Both double jeopardy and Anthony address whether multiple punishments may be visited upon a Defendant who participates in one criminal episode. See State v. Denton, 938 S.W.2d 373, 379 (Tenn. 1996); Anthony, 817 S.W.2d at 300. Here, the facts clearly show that Defendant possessed cocaine at two locations separate and distinct from one another–in co-defendant Marshall's car and at Defendant's own residence. For the purposes of the Drug-Free School Zone Act, Defendant possessed cocaine within the buffer zones of two different schools. Defendant committed two discreet crimes, and thus each criminal event may be prosecuted separate from the other. Defendant is not entitled to the merger of his two cocaine possession convictions.

### F. Sentencing

Defendant next challenges his sentence for his conviction of two counts of cocaine possession, more than .5 grams, within 1000 feet of a school. Specifically, Defendant argues that his sentence of 20 years on each count, each to be served concurrently with the other, is excessive. Although we conclude that the trial court erred when it applied one enhancement factor to the sentence for possession of cocaine at Defendant's residence, this error is harmless, and thus we affirm the sentences imposed by the trial court.

When an accused challenges the length, range, or the manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, 103, 210 (1997). See State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Here, the trial court sentenced Defendant to twenty (20) years on each cocaine possession count based on his status as a Range I standard offender. On the marijuana possession count Defendant was sentenced to six (6) months. The trial court ordered all the sentences to run concurrently. The trial court erred in its application of one enhancement factor to the sentence for cocaine possession at Defendant's residence. However, the record shows that the trial court carefully followed the required statutory procedure when it sentenced Defendant. Even though we find herein that an enhancement factor was improperly applied, the determinations of the trial court are still entitled to the presumption of correctness. Our Supreme Court, in State v. Gutierrez, 5 S.W.3d 641 (Tenn. 1999), indicated that the only time the presumption of correctness does not apply is when the record fails to demonstrate that the trial court considered the statutory sentencing principles. We therefore review the sentence de novo with a presumption of correctness. Id. at 644, n. 5.

The presentence report shows that Defendant was thirty (30) years old at the time he was sentenced, and he has a GED. He is not married and has no children. His parents live in Michigan, and he has two living siblings. His employment history shows sporadic employment from 1986 up until the time of his trial on the instant charges. In the presentence report Defendant admits to continued long-term marijuana use. The report notes, however, that Defendant has no prior adult criminal record, and an attempt to locate a juvenile record in Michigan was not successful.

The trial court correctly determined that Defendant is a Range I standard offender–Defendant has no prior criminal convictions. Possession of cocaine, more than .5 grams, within 1000 feet of a school is a Class A felony, and the sentencing range for a standard offender (Range I) is 15 to 25 years. Tenn. Code Ann. §§ 39-17-432(c); 40-35-112 (1997). For a class A felony, a court must start at the presumptive sentence, the midpoint of the sentencing range, increase the sentence with the applicable enhancement factors (if any), and then decrease the sentence with any appropriate mitigating factors. See id. § 40-35-210(c), (e); State v. Chance, 952 S.W.2d 848, 850-51 (Tenn. Crim. App. 1997). Persons who are convicted of violating the Drug-Free School Zone Act are partially removed from the sentencing scheme for the purposes of determining the minimum percentage of the sentence that will be served. See Tenn. Code Ann. § 39-17-432(c), (d) (1997).

The minimum sentence that must be served is the minimum sentence for the range–not the standard percentage assigned to the defendant's offender classification status. Id.

Here, the trial court was correct in determining that two enhancement factors are present for the count of cocaine possession arising from the cocaine in Marshall's vehicle. First, the presentence report notes that Defendant admitted a long history of marijuana use, and thus enhancement factor (1) applies. See id. § 40-35-114(1); State v. Carico, 968 S.W.2d 280, 287 (1998). Second, the trial court correctly found that Defendant was a leader in the commission of an offense involving two or more persons, and thus enhancement factor (2) applies. See Tenn. Code Ann. § 40-35-114(2) (1997). As to mitigating factors, the trial court was also correct in noting that the absence of a prior criminal record is a proper mitigating factor. State v. Gutierrez, 5 S.W.3d 641, 646-47 (Tenn. 1999).

For the count of cocaine possession arising from the cocaine at Defendant's residence, the trial court correctly applied enhancement factor (1). See Tenn. Code Ann. § 40-35-114(1) (1997). Like the other possession count, the absence of a prior criminal record is also a proper mitigating factor. Gutierrez, 5 S.W.3d at 646-47. However, the trial court erred when it applied enhancement factor (2). See Tenn. Code Ann. § 40-35-114(2) (1997). There is no evidence of the record that there was more than one person involved in this crime. Marshall's mere knowledge that Defendant was committing the crime in his home did not make Marshall a participant in this offense.

The trial court sentenced Defendant to twenty (20) years for each count of cocaine possession, more than .5 grams, within 1000 feet of a school. Despite the trial court's error regarding the enhancement factors for the possession count related to Defendant's residence, we think this sentence is appropriate. The trial court did not err by beginning at the midpoint of the range (20 years) for each count. See Tenn. Code Ann. § 40-35-210(c), (e) (1997); Chance, 952 S.W.2d at 850-51. The trial court noted that an increase over the midpoint, to twenty-two (22) years was warranted based on the enhancement factors discussed above, but that the increase was mitigated by Defendant's lack of a criminal record. Although the trial court incorrectly applied enhancement factor (2) to the count resulting from cocaine possession at Defendant's residence, Defendant still received the presumptive sentence of twenty (20) years.

In summary, in conducting our review of Defendant's sentence on two counts of cocaine possession, more than .5 grams, within 1000 feet of a school, we find no error, and affirm the trial court's sentences. Defendant is sentenced to twenty (20) years on each count, sentences to run concurrently, and thus shall serve a minimum of fifteen (15) years before he is eligible for release. The cocaine possession sentences will both be served concurrently with Defendant's sentence for possession of marijuana, less than .5 ounces.

### III.  Conclusion

For the forgoing reasons we AFFIRM Defendant's conviction of two counts of cocaine possession, more than .5 grams, within 1000 feet of a school, and one count of possession of marijuana, less than .5 ounce. We also AFFIRM the trial court's sentence for the two counts of cocaine possession.

_____

THOMAS T. WOODALL, JUDGE