

FILED

05/30/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2017

**STATE OF TENNESSEE v. RAFAEL MORENO, JR.**

**Appeal from the Circuit Court for Perry County**
**No. 2015-CR-3      Deanna B. Johnson, Judge**

_____

**No. M2016-01305-CCA-R3-CD**

_____

Defendant, Rafael Moreno, Jr., pled guilty to one count of aggravated statutory rape. After a sentencing hearing, the trial court sentenced him to a three-year sentence of incarceration as a Range I, standard offender. Defendant appeals the trial court's denial of judicial diversion and/or an alternative sentence. Because the trial court did not abuse its discretion, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Vanessa Bryan, District Public Defender, and Jakob L. Schwendimann, Assistant Public Defender, for the appellant, Rafael Moreno, Jr..

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Kim Helper, District Attorney General; and Jennifer Mason, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Defendant was indicted by the Perry County Grand Jury in February of 2015 for aggravated statutory rape. He pled guilty to the offense with the trial court to determine the length and manner of service of the sentence at a hearing.

Investigator Kurt Mercer of the Perry County Sheriff's Department testified at the sentencing hearing that he became involved in an investigation of Defendant after a

referral from the Department of Children's Services ("DCS") in September of 2014. Investigator Mercer travelled to the home of C.F.,[1] the victim, who was fourteen years of age at the time. He was accompanied by a DCS case manager.

The victim reported to Investigator Mercer that Defendant, who was twenty-seven years of age at the time, lived with her family. The victim told Investigator Mercer that Defendant would come into her bedroom to watch movies and play games. The victim also reported Defendant "touching, feeling, him doing things in the room with her and sometimes with her other sisters present."

After this visit, Investigator Mercer interviewed Defendant at the residence. Defendant described his relationship with the victim as close friends and then "basically admitted to all of [the victim's] allegations." Investigator Mercer described Defendant as "very honest and forthcoming." In fact, Defendant admitted that he had intercourse with the victim on at least two occasions and masturbated in front of her on at least one occasion. Investigator Mercer explained that Defendant "believed that [he and the victim] were in a relationship that was more than friends." Defendant admitted to the investigator that the relationship was "wrong." Investigator Mercer got the feeling Defendant thought he was in a consensual relationship with the victim. The victim eventually admitted that she had intercourse with Defendant and indicated that it was consensual.

The victim's father testified that he knew Defendant for approximately ten years because Defendant attended school with his oldest stepson. Defendant's mother passed away in an apartment fire two to three weeks before high school graduation, and Defendant did not have anywhere to live. At the time, the victim's father had three stepchildren and two natural children living at the home he shared with his wife, the victim's stepmother. The victim's father trusted Defendant and considered him a part of the family. After living with the family for one and a half to two years, Defendant moved to Indiana. Defendant stayed in Indiana for a while but eventually called to tell the victim's father "he had gotten in a little trouble and he wasn't doing as good up there [as he thought he should be]." The victim's father offered for Defendant to come back and live with them again. This time, Defendant stayed for nearly a year before the family moved into a new home. Defendant moved with them into the new home and shared a room with one of the victim's brothers. Defendant had a full-time job and was consistent with "[h]elping paying on all [the] bills."

The victim's father once saw Defendant sitting at the foot of his oldest daughter's bed. He did not have any concerns about Defendant at that time and treated Defendant

---

[1] It is policy of this Court to protect the identity of victims of sexual abuse.

like a member of the family. The victim's father came home one day to see Investigator Mercer's car parked in the driveway. Once the victim's father learned about the allegations, Defendant was no longer welcome in the home. The victim's father described the victim as "very vulnerable" and testified that she was raped at the age of twelve when she was visiting her biological mother in Illinois.

In the Defendant's statement provided in the presentence report, Defendant indicated that the victim first came on to him by "exposing herself" during a movie they were watching at the home. Defendant claimed that the victim kissed him and "reassured" him that it was "okay." Defendant testified at the sentencing hearing, admitting that he "made an enormous mistake." He apologized to the family and stated he did not plan on anything like "that" happening again.

The trial court found that the victim was fourteen years of age at the time of the offense and that Defendant was twenty-seven years of age. The trial court noted that Defendant "believed he and [the victim] were in a relationship together" and that Defendant admitted to the investigator that he had sexual intercourse with the victim and masturbated in front of her on one occasion. The trial court recognized that the victim's father trusted Defendant prior to this incident.

The trial court noted the principles and purposes of sentencing, that Defendant was a Range I, standard offender, and the allocution by Defendant. The trial court applied mitigating factor one, that Defendant's criminal conduct neither caused nor threatened serious bodily injury. *See* T.C.A. § 40-35-113(1). The trial court also considered the fact that Defendant provided "substantial assistance to law enforcement" in that "[h]e was honest, obviously to his detriment, because he told [law enforcement] information that they did not know and it ultimately resulted in a higher charge." *See* T.C.A. § 40-35-113(13). The trial court enhanced Defendant's sentence on the basis that Defendant admitted to "other criminal acts" with the victim. *See* T.C.A. § 40-35-114(1). The trial court also determined that factor (7) applied, that the offense involved the victim and was committed to gratify the defendant's desire for pleasure or excitement. *See* T.C.A. § 40-35-114(7). The trial court also enhanced Defendant's sentence on the basis that Defendant abused a position of private trust. *See* T.C.A. § 40-35-115(14). As a result of the application of the enhancement and mitigating factors, the trial court sentenced Defendant to three years in incarceration.

At some point after the sentencing hearing, it appears that Defendant filed a motion to reconsider sentencing. This motion does not appear in the technical record. However, there is a supplemental technical record with a transcript from a hearing on the motion to reconsider. During the hearing, Defendant introduced an application for judicial diversion and asked the trial court to make specific findings on the record as to whether Defendant was eligible for diversion.

The trial court acknowledged the failure to specifically address factors related to diversion at the sentencing hearing and made findings on the record at the hearing on the motion to reconsider sentencing with regard to the specific factors, including: (1) Defendant's amenability to correction; (2) the circumstances of the offense; (3) Defendant's criminal record; (4) Defendant's social history; (5) Defendant's physical and mental health; (6) the deterrent value to Defendant as well as others; and (7) the interest of the public as well as the accused. *See State v. King*, 432 S.W.3d 316, 327 (Tenn. 2014). The trial court denied diversion and determined that factors 2, 6, and 7 were "most heavily weighted against [Defendant] being granted diversion or . . . to a sentence other than a sentence to serve."

Defendant filed a timely notice of appeal.

*Analysis*

Before addressing Defendant's issues on appeal, we note that the technical record does not include a copy of the guilty plea submission hearing transcript. However, the record includes a copy of the indictment, the presentence report, and the transcripts from the sentencing hearing and hearing on the motion to reconsider sentencing. We conclude that the record provides us with a sufficient factual basis to conduct a meaningful review of the trial court's judgments. *See State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012) (holding that "when a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in [*State v. Bise*, 380 S.W.3d 682 (Tenn. 2012)]").

*Standard of Review*

A trial court considers the following factors when determining the sentence for a criminal conviction: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. §§ 40-35-102,-103,-210; *see also Bise*, 380 S.W.3d at 697-98. When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *Bise*, 380 S.W.3d at 707. The same standard of

review applies to a trial court's decision regarding "probation or any other alternative sentence," *Caudle*, 388 S.W.3d at 278-79, as well as judicial diversion, *King*, 432 S.W.3d at 325. This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

*Denial of Probation*

Tennessee Code Annotated section 40-35-102(3)(C) provides that "[p]unishment shall be imposed to prevent crime and promote respect for the law by . . . [e]ncouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants[.]" Tennessee Code Annotated section 40-35-104(c)(9) authorizes a "sentence to a community based alternative to incarceration . . . ." Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed," and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" T.C.A. § 40-35-103(5).

A defendant is eligible for probation if the sentence imposed is ten years or less. T.C.A. § 40-35-303(a). Although "probation shall be automatically considered by the court as a sentencing alternative for eligible defendants," the defendant bears the burden of "establishing suitability" for probation. T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). A defendant who is sentenced as an especially mitigated or standard offender and who has committed a Class C, D, or E felony should be "considered as a favorable candidate for alternative sentencing options," if certain conditions are met. T.C.A. § 40-35-102(5), (6)(A). The guidelines regarding favorable candidates are advisory. T.C.A. § 40-35-102(6)(D). In this case, Defendant was convicted of a Class D felony, received a three-year sentence, and was not convicted of any of the offenses listed in the statute rendering him ineligible for an alternative sentence. Therefore, Defendant was a favorable candidate for alternative sentencing.

Tennessee Code Annotated section 40-35-103(1) dictates that sentences involving confinement be based on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

In this case, Defendant specifically argues that the trial court improperly relied on Tennessee Code Annotated section 40-35-103(1)(B) in denying alternative sentencing. Defendant, relying on *State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), insists that the "[b]efore the trial court can rely on the deterrent effect in denying alternative sentencing, 'there must be some evidence contained in the record that the sentence imposed will have a deterrent effect within the jurisdiction.'" We are perplexed by Defendant's argument as we are unable to pinpoint any statements made by the trial court during the initial sentencing hearing that would indicate the trial court denied an alternative sentence on the basis of section 40-35-103(1)(B). Instead, the trial court determined that Defendant should serve his sentence in confinement on the basis that he failed to accept responsibility and abused a position of private trust. The trial court commented at the sentencing hearing that Defendant "knew better" than to get involved with the victim because he was a "27 year old man" and his "behavior has torn this family apart." In other words, confining Defendant was necessary to avoid depreciating the seriousness of the offense. *See State v. Gutierrez*, 5 S.W.3d 641, 647 (Tenn. 1999) (holding that a defendant's failure to acknowledge "culpability for his actions supports a finding that a sentence of confinement is necessary to avoid depreciating the seriousness of this crime"). These findings are consistent with the purposes and principles of sentencing. The trial court did not abuse its discretion in denying an alternative sentence.

### Denial of Diversion

Defendant also argues that the trial court erred in denying judicial diversion and urges this Court to perform a de novo review because the trial court "failed to give mention as to diversion during the initial sentencing hearing." Defendant admits that the

- 6 -

trial court held a hearing on his motion to reconsider the sentence and, during that hearing, "reviewed the factors pertinent to judicial diversion and denied [Defendant's] request." The State argues that Defendant has waived this issue for failure to support his "conclusory assertion with argument."

We agree with the State. Defendant's entire argument with respect to the denial of judicial diversion spans one sentence: "[u]nder the standard above, in light of the [t]rial [c]ourt's errors in denying any alternative sentencing in this case, [Defendant] would argue that an abuse of discretion has taken place and the [a]ppellate [c]ourt is entitled to review the denial of judicial diversion de novo." Defendant has waived consideration of this issue for failure to cite authority or support his issue with argument. *See* Tenn. Ct. Crim. App. R. 10(b). Moreover, our review of the record reveals that the trial court herein did not abuse its discretion in denying diversion. The trial court considered the factors set forth in *King*, and did not abuse its discretion in determining that the factors weighed against the grant of diversion. *See* 432 S.W.3d at 323.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE