IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 5, 2011

**STATE OF TENNESSEE v. CARLOS WALLS**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-02900      Otis W. Higgs, Jr., Judge**

_____

**No. W2010-01129-CCA-R3-CD  - Filed June 29, 2011**

_____

A Shelby County jury convicted the defendant, Carlos Walls, of aggravated sexual battery, a Class B felony. The trial court sentenced him as a Range I, violent offender to twelve years in the Tennessee Department of Correction. On appeal, the defendant argues that the evidence was insufficient to support his conviction, that the trial court erred in admitting the defendant's statement to the Department of Children's Services as evidence, and that the trial court applied improper enhancement factors. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Barry W. Kuhn (on appeal); Robert Wilson Jones, District Public Defender; and Lisa Kutch and Donna Armstard (at trial), Assistant Public Defenders, Memphis, Tennessee for the appellant, Carlos Walls.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Carrie Shelton and Scott Bearup, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Background**

On April 24, 2007, a Shelby County grand jury indicted the defendant for the aggravated sexual battery of L.S.,[1] a child under thirteen years old, a Class B felony. The matter proceeded to trial on December 14, 2009.

The victim testified that the defendant lived with her family for approximately one year when she was eight years old. They lived in an apartment but moved to a house some time around her ninth birthday. The victim recalled the first time that the defendant touched her vagina, testifying that while they lived in the apartment, he called her into a bedroom, pulled his pants down, and touched her vagina with a finger. She testified that he touched her on more than one occasion. The victim said that after they moved to the house, the defendant touched her vagina while she was taking a bath. She testified that she had locked the door to keep the defendant out, but he opened the door somehow. He touched her navel and then touched her vagina while she was in the bathtub. The victim said that sometimes he took her into his bedroom after she had bathed and would dry her off with a towel, rub lotion and powder on her, and touch her vagina. The victim testified that the defendant rubbed "his private part against [hers] and he . . . put his tongue on [her] privates." She recalled that he ejaculated once onto her bottom and wiped the ejaculate off with tissue. The victim said that she did not realize that it was sperm at the time, but she had learned about it since then. She recalled one occasion at the apartment when the defendant tried to put his penis in her mouth, but she kept her mouth closed and it only touched her lips. The victim said that his penis never went inside her mouth or into her vagina. She testified that she obeyed him when he told her to go into the bedroom because she was afraid of him. The victim said that the defendant threatened her by saying she would get in trouble if she told anyone. She testified that he took care of her and her brother while her mother worked. The victim said that the defendant moved out of the house but she could not remember when. She told her mother about the times that the defendant had touched her vagina when her mother began talking to her and her brother about the defendant moving back in with them. The victim went to counseling at the Department of Children's Services.

On cross-examination, the victim recalled telling a Child Advocacy Center employee during an interview that she kicked the defendant when he tried to put his penis inside of her and that the defendant threatened to kill her.

Memory Shields, the victim's mother, testified that she met the defendant while they were working together at Barnes and Noble. They became intimate, and he moved into her apartment with her and her two children. Ms. Shields was the "primary breadwinner," and the defendant took care of the children while she worked. She said that he worked off and on. She never suspected that anything was wrong, and she trusted him to care for her

---

[1] It is the policy of this court to refer to minor victims of sexual offenses by their initials.

children. Ms. Shields testified that she asked the defendant not to discipline her children and that it was not necessary for him to bathe L.S. because she was old enough to bathe herself. Ms. Shields said that the defendant began seeing someone else and moved out of the house. They remained on "speaking terms." She said that they began discussing "trying to work it out" between them within a week after he had moved out. Ms. Shields testified that she wanted to discuss his moving back in with her children before she agreed to it. When she asked them how they felt about the situation, L.S. became frightened. She waited to talk to L.S. about why she was upset until they were away from L.S.'s brother because she did not want to upset him, also. L.S. told her that the defendant had touched her. Ms. Shields said that she believed L.S., but she did not know what to do. She called her sister, and based on her sister's advice, she reported the situation to the police the day after L.S. told her what happened.

Letitia Cole, a case manager with the Department of Children's Services, testified that she investigated the allegations of sexual abuse made in this case, along with Sergeant Beck of the Memphis Police Department. She interviewed the defendant at his home and recorded his statement. Ms. Cole testified that the defendant admitted that he touched the victim's vagina on a few occasions after the victim got out of the bathtub. The state played the tape of the defendant's recorded statement for the jury. In his statement to Ms. Cole, the defendant admitted to rubbing the victim's private parts after she had taken a bath. He also admitted to doing the same thing to someone else.

Following the close of proof and deliberations, the jury found the defendant guilty as charged. The trial court sentenced him as a Range I, violent offender to twelve years in the Tennessee Department of Correction.

## Analysis

### I. Admission of Prior Bad Acts Evidence (Defendant's Issue 4)

The defendant argues that the trial court erred by admitting evidence of a prior bad act committed by the defendant when the evidence of the prior bad act was not relevant to a contested issue. The state responds that the trial court properly admitted the evidence.

Pursuant to Tennessee Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts is generally not admissible "to prove the character of a person in order to show action in conformity with the character trait." The rationale underlying this rule is that the admission of such evidence carries with it the inherent risk of the jury convicting the accused of a particular crime based upon his bad character or propensity to commit the crime rather than the strength of the evidence. *State v. Rickman,* 876 S.W.2d 824, 828 (Tenn. 1994). The

risk is greater when the accused's other bad acts are similar to the crime for which the accused is on trial. *Id.*; *see also State v. McCary*, 922 S.W.2d 511, 514 (Tenn. 1996). Nonetheless, evidence of other crimes, wrongs or acts may be admissible where it is probative of a purpose other than the accused's propensity. Tenn. R. Evid. 404(b). Although Rule 404(b) does not explicitly list the exceptions under which evidence of prior crimes, wrongs, or acts may be admitted, our courts have held that such evidence may be admissible to show another purpose such as: motive, intent, guilty knowledge, identity of the defendant, absence of mistake, or the existence of a common scheme. *See, e.g., State v. Berry*, 141 S.W.3d 549, 582 (Tenn. 2004); *Collard v. State*, 526 S.W.2d 112, 114 (Tenn. 1975). To admit such evidence, Rule 404(b) specifies the following:

> (1) The court upon request must hold a hearing outside the jury's presence;

> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

> (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). Should a review of the record indicate that the trial court substantially complied with the requirements of Rule 404(b), the trial court's admission of the challenged evidence will remain undisturbed absent an abuse of discretion. *State v. James*, 81 S.W.3d 751, 759 (Tenn. 2002); *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997).

In this case, the trial court did not follow the appropriate procedure required by Rule 404(b). Prior to the publication of the taped statement, the defense objected to the admission of the entire tape and requested that the trial court redact a portion of the statement in which the defendant admitted to a prior sexual battery against another child. The trial court sent the jury out to hear the objection. The trial court determined that the defendant's admission to a prior bad act was prejudicial but overruled the defendant's motion and stated that it would issue a curative instruction to the jury. *After* the publication of the taped statement, the trial court held a 404(b) hearing and determined that the evidence of the prior bad act was relevant to the defendant's "[i]dentity[,] [s]cheme[,] [m]otive[,] [and] [i]ntent." In our view, holding a 404(b) hearing *after* the admission of the evidence and publication of the evidence to the

jury was not substantial compliance with Rule 404(b). Therefore, the trial court's determination of admissibility is not subject to deference.

Here, there is nothing on the record to suggest that the defendant's admission of a prior bad act was probative of a purpose other than to show his propensity. His identity and motive were not contested issues, and there was no argument that the prior bad act and the charged offense were part of a scheme. We fail to see how the admission of the prior bad act evidence was probative of his intent to commit the instant offense. The risk of unfair prejudice was very high as it involved a similar offense. *See Rickman*, 876 S.W.2d at 828. The limiting instructions given to the jury "worked to alleviate the prejudicial effect of the evidence, . . . presum[ing] that [the jury] follow[ed] the instructions given to them by the trial court." *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). Nevertheless, in balancing the risk of unfair prejudice against the minimal probative value, we conclude that danger of unfair prejudice outweighed the probative value and that the trial court erred in admitting the evidence of the defendant's prior bad act.

However, we further conclude that the trial court's error was harmless. When undertaking a harmless error analysis, this court must consider whether "an error more probably than not had a substantial and injurious impact on the jury's decision-making." *State v. Rodriguez,* 254 S.W.3d 361, 372 (Tenn. 2008). "The line between harmless and prejudicial error is in direct proportion to the degree of the margin by which the proof exceeds the standard required to convict beyond a reasonable doubt." *State v. Carter*, 714 S.W.2d 241, 248 (Tenn. 1986). Here, the victim's testimony combined with the defendant's admission provided overwhelming proof of his guilt. Therefore, the trial court's error in admitting prior bad act evidence was harmless.

## II. Sufficiency of the Evidence (Defendant's Issue 5)

The defendant argues that the evidence was insufficient to support his conviction. Specifically, he argues that "the jury did not have one, clear, specific event to consider" because there was "no testimony as to the date or time of the event."

We begin our review by setting forth the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319,

99 S. Ct. 2781, 61 L. Ed.2d 560 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *see* Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002).

Aggravated sexual battery is the "unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances: [t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). "Sexual contact" is "the intentional touching of the victim's, the defendant's, or any other person's intimate parts, . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6). Additionally, "'[i]ntimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." *Id*. at (2).

Because the proof tended to show multiple incidences of sexual contact, the state elected to submit for the jury's consideration "the alleged act of sexual contact of the defendant touching the vagina of [L.S.] after taking a bath when she was nine (9) years old while living at the address on King in Shelby County, Tennessee." The defendant does not appear to challenge the specificity of the state's election but rather that the proof was insufficient to prove the elected offense; nevertheless, we note that "[t]he State is not required to prove that an offense was committed on a specific date unless the date is an element of the crime or essential to proving the offense." *State v. Brown*, 992 S.W.2d 389, 392 (Tenn. 1999) (citing *State v. Byrd*, 820 S.W.2d 739, 741-42 (Tenn. 1991)). Viewed in the light most favorable to the state, the proof at trial showed that the defendant touched the victim's vagina while she was in the bathroom of the house that they lived in when the victim was nine years old. The victim testified to a specific occasion when she locked the bathroom door to take a bath, but the defendant entered the bathroom anyway and touched her navel and vagina. The victim testified generally about many other occasions when the defendant touched her. Another panel of this court has held that when "particularized testimony was specific to a single incident" and other testimony was general, "the jury must have been relying on this specific incident in reaching its verdict." *State v. Anthony J. Ramey*, No. E2003-01840-CCA-R3-CD, 2004 WL 1580662, at *10 (Tenn. Crim. App., at Knoxville, July

15, 2004).  Similarly, we conclude that in this case, the victim's testimony regarding the incident in the bathroom was sufficient for the jury to find the defendant guilty of aggravated sexual battery on that specific occasion.  Therefore, the defendant's argument is without merit.

## III. Sentencing (Defendant's Issues 1-3)

The defendant argues that he received an excessive sentence because the trial court misapplied two enhancement factors.  Specifically, he argues that the trial court did not find that "physical and mental limitations resulting from the victim's age rendered the victim *particularly* vulnerable" and that he was not in a position of private trust with the victim.

An appellate court's review of a challenged sentence is *de novo* on the record with a presumption the trial court's determinations are correct.  Tenn. Code Ann. § 40-35-401(d).  The Sentencing Commission Comments to this section of the statute indicate that the defendant bears the burden of establishing that the sentence is improper.  When the trial court follows the statutory sentencing procedure and gives due consideration to the factors and principles relevant to sentencing, this court may not disturb the sentence.  *See State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008).

As a Range I offender, the defendant was subject to a sentence of eight to twelve years for aggravated sexual battery, a Class B felony.  *See* Tenn. Code Ann. § 40-35-112(a)(2).  The trial court found that no mitigating factors applied.  The trial court found that the following enhancement factors applied: (1) the defendant had a previous history of criminal convictions beyond that necessary to establish the sentencing range; (2) the victim was particularly vulnerable because of age; (3) the defendant, prior to trial, had failed to comply with a sentence involving release into the community; and (4) the defendant abused a position of private trust.  The trial court sentenced the defendant to twelve years at 100%.  The defendant challenges the trial court's findings that the victim was particularly vulnerable because of age and that he abused a position of private trust.

In *State v. Adams*, the Tennessee Supreme Court held that

the vulnerability enhancement relates more to the natural physical and mental limitations of the victim than merely to the victim's age . . . . The factor can be used . . . if the circumstances show that the victim, because of [her] age or physical or mental condition, was in fact "particularly vulnerable," i.e., incapable of resisting, summoning help, or testifying against the perpetrator.

864 S.W.2d 31, 35 (Tenn. 1993), *superseded by statute on other grounds, as recognized by State v. Jackson*, 60 S.W.3d 738 (Tenn. 2001). The state has the burden of proving that the victim's limitations rendered her particularly vulnerable. *Id.* In our view, the state did not carry its burden. It merely argued that the factor should apply because of the victim's age rather than any limitations due to her age. The defendant elicited proof during the trial that the victim did resist at least once. Therefore, we conclude that the trial court erred in applying this enhancement factor.

The defendant contends that the defendant was not in a position of private trust with the victim. It is well-settled that proper application of the private trust factor requires that the court examine "the nature of the relationship," and whether that relationship "promoted confidence, reliability, or faith." *State v. Gutierrez*, 5 S.W.3d 641, 646 (Tenn. 1999) (quoting *State v. Kissinger*, 922 S.W.2d 482, 488 (Tenn. 1996)). "A relationship which promotes confidence, reliability, or faith, usually includes a degree of vulnerability." *Id*. It is the exploitation of this vulnerability to achieve the criminal offense which is deemed more blameworthy and thus justifies application of the enhancement factor. *Id*. Here, the defendant only had access to the victim because her mother left her in his care while she went to work. Her mother trusted him to babysit her and take her to and from school. Additionally, the defendant was her mother's live-in boyfriend. As the Tennessee Supreme Court noted in *Kissinger*, "[t]he position of parent, step-parent, babysitter, teacher, coach are but a few obvious examples" of positions of private or public trust. 922 S.W.2d at 488. We conclude that the trial court did not err in applying this enhancement factor.

An error in the application of enhancement factors will not necessarily result in modification of the sentence if the trial court, in determining the specific sentence, considered the nature and characteristics of the crime, the character and background of the defendant, and the purposes of the Sentencing Act. *See* Tenn. Code Ann. § 40-35-210(b). Despite the trial court's reliance on an inapplicable enhancement factor, the record supports the court's consideration of the remaining three enhancement factors.[2] The record reflects that in determining the specific sentence length, the trial court considered the provisions of Tennessee Code Annotated section 40-35-210, as well as the required principles of sentencing. As such, we affirm the length of the sentences as imposed.

---

J.C. McLIN, JUDGE

---

[2] The defendant's criminal record supports the application of the two enhancement factors that he did not challenge on appeal.